UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

TAMMY RICHARDSON                      )
        Plaintiff                         )          Civil Action No.
        vs.                               )          3:00 CV 1062(JCH)
METROPOLITAN DISTRICT                  )
COMMISSION, HARTFORD.                  )
        Defendant                         )
                                          )          DECEMBER 15, 2003.

_____

## PLAINTIFF'S COMPLIANCE WITH THE COURT'S PRETRIAL ORDER JOINT TRIAL MEMORANDUM

1.    **TRIAL COUNSEL:**

    For the Plaintiff:      PAUL M. NGOBENI
                             914 Main Street , Suite  206
                             East Hartford, CT 06108
                             Telephone No. (860) 289-3155
                             Telefax No. (860) 282-7479

    For the Defendants: ANTHONY PALERMINO
                             945 Wethersfield Ave.
                             Hartford, CT. 06114
                             Telephone No. (860) 296-0035
                             Telefax No. (860) 296-9468

2).    **JURISDICTION**

    A.   Plaintiff brings this action pursuant to 42 U.S.C. 1981, 42 U.S.C. 1983, Title VII of the

Civil Rights Act of 1964, The Americans with Disabilities Act,  42 U.S.C. § 12188(a)(1), which

incorporates the provisions of 42 U.S.C. § 2000a-(3)(a), providing for civil actions by any person

being subjected to discrimination on the basis of disability in violation of Title III of the ADA, and

42 U.S.C. § 12133, which incorporates the provisions of 29 U.S.C. § 794a, for violations of Title II of the ADA; Title VII of the Civil Rights Act; 42 U.S.C. §2000e; sections 104 and 105 of the Family Medical Leave Act of 1993; and 29 U.S.C. §§2614 and 2615.

B.   This court has jurisdiction over the claims presented in this action pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4), 28 U.S.C. § 1345, 29 U.S.C. §2617, 29 U.S.C. §794 *et seq*., and 42 U.S.C. §1981.

C.   Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. 2201 and 2202. The Court has supplemental jurisdiction over the State law claim pursuant to 28 U.S.C. 1367.

D.   Ms. Richardson has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. 2000(e). Ms. Richardson filed timely charges with the State of Connecticut Commission on Human Rights and opportunities, (CCHRO) and the Equal Employment Opportunity Commission (EECO). Ms. Richardson subsequently requested and has received the Right to sue letter from the EEOC.

E.   The jurisdiction of this Court is not disputed.


3.   **JURY/NON-JURY TRIAL INFORMATION**

A.   Jury Trial:

This case is to be tried to the Jury on all issues


4.   **LENGTH OF TRIAL:**

The estimated length of trial for plaintiff's case- in- chief  is four (4) days.

The estimated length of trial for defendant's case is three days.

5.    **FURTHER PROCEEDINGS:**

A.    No further proceedings are expected; the plaintiff notes that a settlement conference has been  scheduled by the Court in this matter.

B.    Plaintiff asserts that defendants' allegations regarding the trustee and appointment of counsel for the estate are a red herring. The trustee has abandoned the claim and has not fulfilled his obligations under _Taylor v. Freeland & Kronz_, 503 US 638, 112 SCt 1644, 118 LEd2d 280 (1992).

C.     Defendant's request for clarification on the constructive discharge  claim is equally meritless.  This Court's initial ruling on the defendants' motion for Summary Judgment on August 2, 2002 expressly stated "T_o the extent that the record may not be clear, the Court granted the prior motion to dismiss the sex discrimination and constructive discharge claims,....._**on the ground that the plaintiff failed to exhaust her administrative remedies.**_....Based on the record before the Court,_ **the plaintiff has failed to exhaust her administrative remedies with regard to the sex discrimination and constructive discharge claims.**  _Accordingly, the Court does not address those claims with regard to the motion for summary judgment...._" **Ruling on Motions For Summary Judgment [DKT. Nos., 40,43] and Motions To Strike [DKT. No. 50, 56], August 2, 2002 (Judge  Hall J.) at p.13.**  This Court's ruling of July 23, 2003 expressly acknowledged that the earlier dismissal of the plaintiff's Section 1983 sexual discrimination claim was in error as plaintiff was not required to exhaust any administrative remedies on the Section 1983 claim.  The Court sua sponte granted the defendants leave to file a motion for summary judgment solely on the plaintiff's Section 1983 sex discrimination claim.    Although the

defendants availed themselves of that second bite of the apple, they never addressed the pivotal issue of whether plaintiff's claims of sexual discrimination and hostile work environment if proven could be sufficient to establish a constructive discharge claim. In any event, plaintiff submits that the following findings of this Court and established Second Circuit case law makes it impossible that the Court would have dismissed the constructive discharge claims: First, to establish a claim of racial or gender discrimination under Title VII,Section 1981 or 1983 a claimant must show that: 1) she belonged to a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. See Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002). An "adverse employment action" is one which is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quoting Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)). Examples of materially adverse changes include "**_termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation._**" Id. (quoting Crady, 993 F.2d at 136)(emphasis added). Under the foregoing statutes, once a plaintiff has established a prima facie case, the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions. See McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (Title VII); Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (ADEA). Thus, once the defendant has made a showing of a neutral reason for the complained of action, "to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be

sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." <u>Stern</u>, 131 F.3d at 312.  This Court's two prior rulings leave no doubt as to whether plaintiff has a triable issue of fact as to all her materially adverse employment conditions.

This Court's ruling on the hostile work environment claim furnishes further strong evidence that the constructive discharge claim cannot be dismissed as a matter of law.   In order to prevail on a hostile work environment claim under Title VII or Section 1983, a plaintiff must show that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Alfano v. Costello</u>, <u>294 F.3d 365</u>,  373 (2d Cir. 2002) (quoting <u>Perry v. Ethan Allen, Inc</u>., 115 F.3d 143, 149 (2d Cir. 1997));[fn20] see also <u>Oncale v. Sundowner Offshore Serv., Inc.</u>, 523 U.S. 75, 78 (1998) (stating that a hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"). The Second Circuit has explained that "[t]his test has objective and subjective elements: the misconduct must be `severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." <u>Alfano</u>, 294 F.3d at 374 (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993). Among the factors to consider when determining whether an environment is sufficiently hostile are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris,</u> 510 U.S. at 23. In determining whether a  hostile environment exists, we must look at the "totality of the

circumstances." <u>Richardson</u>, 180 F.3d at 437-38. "As a general rule, incidents must be more than

`episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"

<u>Alfano</u>, 294 F.3d at 374 (quoting Perry, 115 F.3d at 149).    While the standard for establishing a

hostile work environment is high, the Second Circuit has repeatedly cautioned against setting the

bar too high, noting that "[w]hile a mild, isolated incident does not make a work environment

hostile, the test is whether `the harassment is of such ***quality or quantity that a reasonable***

***employee would find the conditions of her employment altered for the worse***.'" <u>Whidbee v.</u>

<u>Garzarelli Food Specialties, Inc</u>., 223 F.3d 62, 70 (2d Cir. 2000) (quoting <u>Torres v. Pisano,</u> <u>116</u> F.3d

625, 632 (2d Cir. 1997)). The environment need not be "unendurable" or  intolerable." Id. Nor must

the victim's "psychological well-being" be damaged. <u>Fitzgerald v. Henderson</u>, <u>251 F.3d 345</u>, 358

(2dCir. 2001). In short, "`the fact that the law requires harassment to be severe or pervasive before

it can be actionable does not mean that employers are free from liability in all but the most

egregious cases.'" <u>Whidbee</u>, 223 F.3d at 70 (quoting Torres, 116 F.3d at 631).  In this case Ms.

Richardson alleges a host of other adverse employment actions against her.   As this Court noted

"Richardson argues that "shortly after she was forced to file a formal complaint because of

Johnson's continued harassment, she was disciplined, suspended without pay, threatened with

termination, and ultimately forced to quite her position." This Court's **Ruling on Motion for**

**Summary Judgment [DKT. No. 62] and Motion to Strike [Dkt. No. 69] of July 23, 2003 at p.19**.

Defendants have not responded that these events were too sporadic and isolated to create a

hostile work environment. Indeed this Court found that Ms. Richardson has set forth sufficient

evidence to permit the inference that she suffered from a hostile work environment.  Plaintiff has

alleged facts sufficient to find that the conduct of which he complains was pervasive. While each

incident on its own may not  have been particularly severe, the Court has explained that "a work environment may be actionable if the conduct there is either so severe or so pervasive as to alter the working conditions of a reasonable employee."Richardson, 180 F.3d at 440. The conduct complained of need not always be both severe and pervasive to be actionable under a hostile work environment theory.  Terry v. Ashcroft, *336 F.3d 128* (2nd Cir. 2003).  Most significant and a point not recognized by this Court or the defendants, a reasonable fact-finder (crediting Ms. Richardson's testimony that the harassment forced her to seek  psychological treatment around October and November 1999) could find that the harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and to create an abusive working environment. Plaintiff shows that she subjectively experienced a hostile work environment because she was not able to do her job because of the harassment.  The question, rather, is whether the conditions under which those tasks must be performed have been altered for the worse. See Whidbee, 223 F.3d at 70.. Whether or not the harassment interferes with an employee's ability to work is merely one factor to be considered when looking at the totality of circumstances to determine whether a hostile work environment has been created.  A reasonable fact-finder could conclude that a number of discrete adverse employment actions — denial of pay increases to unwarranted disciplined, suspension without pay, threat of termination, negative or poor performance ratings — were motivated by retaliatory intent. As this court recognized in Cruz v. Coach Stores, Inc., 202 F.3d 560 (2d Cir. 2000), one type of hostility can exacerbate the affect of another. Id. at 572. Here, hostile sexist attitudes could have exacerbated the affect of retaliation-based or race-based hostility and vice versa.

The issue is whether at the time Ms. Richardson was "forced to quit" the cumulative

weight of the evidence (objective and subjective factors) supported a constructive discharge claim?  An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily. Kirsh v. Fleet St., Ltd., 148 F.3d 149, 161 (2d Cir. 1998); Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996). As the Second Circuit explained, working conditions are intolerable when, viewed as a whole, they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Chertkova, 92 F.3d at 89 (quotations omitted). In addition, to state a prima facie case of constructive discharge, Ms. Richardson must establish that the constructive discharge "occurred in circumstances giving rise to an inference of discrimination on the basis of [her] membership in [a protected] class." Id. at 91. Proof of such a causal connection "can be established `*directly through evidence of retaliatory animus directed against a plaintiff*,' or `*indirectly by showing that the protected activity was followed closely by discriminatory treatment* . . . through *other evidence such as disparate treatment of fellow employees who engaged in similar conduct*.'" Richardson, 180 F.3d at 444 (quoting DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987)). Ms. Richardson has presented sufficient evidence to allow a reasonable fact-finder to conclude that a reasonable person in plaintiff's position would have felt compelled to terminate her employment. First, as this Court accepted and as discussed above, plaintiff has made a sufficient showing for a reasonable trier-of-fact to find that Terry was experiencing a hostile work environment which involved pervasive, unabated harassment by her supervisors. Second, the adverse employment actions identified between March 1999 and November 1999 all evidenced clear intent by defendants to fire or replace Ms. Richardson.  A reasonable person in  Mr.

Richardson's position might have viewed the derogatory statements and adverse actions in conjunction with the other circumstances of her employment, and would have felt compelled to resign as a result. See generally, <u>Chertkova</u>, 92 F.3d at 89-90 where Court recognized that a constructive discharge claim can be premised on the cumulative affect of a number of adverse conditions in the workplace.

Further plaintiff has put forth sufficient evidence to allow a trier-of-fact to conclude that the constructive discharge occurred under circumstances giving rise to an inference of discrimination on the basis of her membership in a protected class. Ms. Richardson does not allege that just a single triggering event caused her to be constructively discharged, but rather that such a discharge resulted from the cumulative, unabated harassment that she experienced.  As this Court accepted previously, plaintiff has set forth sufficient evidence for a reasonable fact-finder to conclude that  Ms. Richardson experienced pervasive harassment in retaliation for her complaints (both against Johnson in March 1999 and the CHRO/EEOC complaint in August 1999).  Since plaintiff has put forth sufficient evidence for a trier-of-fact to conclude that a reasonable person would have felt compelled to leave her job, and that the conditions that would have resulted in such compulsion were the result of an improper motive, summary judgment would not properly have been granted to defendants on plaintiff's claim of constructive discharge in violation of Section 1983 or Section 1981.

D.  Plaintiff correctly claims punitive damages under Section 1981 and 1983.  Section 1983 is a codification of §1 of the Civil Rights Act of 1871. <u>*Kalina v. Fletcher*</u>, 522 U.S. 118, 123 (1997). The purpose of § 1983 is to provide a remedy to parties deprived of rights guaranteed by the constitution or federal statutes against state actors. <u>*Haines v. Fisher,*</u> 82 F.3d 1503 (10th Cir.1996).

A claim under § 1983 is different from a Title VII claim in at least two remaining respects. Section 1983 does not require exhaustion of the EEOC administrative process. *See Patsy v. Bd. of Regents of Florida,* 457 U.S. 496, 500-01 (1982); *Lowe v. Monrovia,* 775 F.2d 998, 1010-11 (9th Cir.1986). Section 1983 does not place a cap on compensatory and punitive damages. *See Cunningham v. Overland,* 804 F.2d 1066, 1069 (8th Cir.1986) (common law principles apply in evaluating the propriety of compensatory and punitive damages awarded under section 1983) (citing *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 305-06 (1986)).   Municipalities are "persons" under §1983 and can therefore be sued for their constitutional torts. See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 (1978). This principle extends to "other local government entities," such as counties. The court in *Cunningham v. Overland,* 804 F.2d 1066, 1069 (8th Cir.1986), confirmed that in a section 1983 action, both compensatory and punitive damages are available upon proper proof and that the principles governing the propriety of compensatory and punitive damages under section 1983 are derived from the common law. citing *Memphis Community School Dist. v. Stachura,*.   Punitive damages, on the other hand, are awarded for the purpose of "punish[ing] the defendant for his willful or malicious conduct and to deter others from similar behavior." *Id.*

In claims under Title VII, §1981, and § 1983, the Supreme Court has recently clarified the standards governing an employer's liability. *See Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). When an employee suffers a tangible employment action resulting from a supervisor's discriminating conduct, the employer's liability is established by proof of the discriminatory conduct and the resulting adverse tangible employment action. *See Faragher*, 524 U.S. at 807-08. No affirmative defense is available to the employer in

those cases.  Absent an express congressional statute such as 42 U.S.C. sect. 1981a(b)(1) prohibiting punitive damages against governmental agencies in Title VII, ADA etc, defendants can cite no authority for their suggestion insofar as Section 1983 cases are concerned.

Plaintiff acknowledges the Supreme Court's statement indicating that punitive damages will be unavailable as a matter of law in Section 1983 cases, see <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762 (1981).  The Court did, however, indicate that in some rare cases, the goal of retribution might be furthered by punitive damages against a municipality. In a footnote, the majority mused, "It is perhaps possible to imagine an extreme situation where the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights. " *Id.* at 267 n.29.


4.    **<u>NATURE OF CASE:</u>**

A.    Plaintiff's Statement of The Case:

**i) Title VII and CFEPA (MDC Only) Claims**

Plaintiff claims that the defendant MDC intentionally subjected Ms. Richardson to discrimination on the basis of her religion, race, color, and retaliated against her for protected activities in violation of the rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sect. 2000e et seq.  Specifically, the Defendant MDC discriminated against plaintiff by: forcing her to quit her job;  by harassing her; by failing to take steps reasonable calculated to stop the harassment; by subjecting her to a hostile, offensive and abusive work environment; by denying her equal pay, raises and employment opportunities it afforded  to white employees and those who were not practicing the plaintiff's religion; by suspending her for observance of her

religious holiday and otherwise discriminating against plaintiff in the terms and conditions of her employment.   By the actions, inaction and conduct described above, the Defendant MDC, acting through its agents, supervisors, and personnel office, has violated the Connecticut Fair Employment Practices Act, CGS Sec. 46a-60(a) (l); Sec. 46a-60(a) (4) and Sec. 46a60(a) (8).  The plaintiff has suffered compensable loss as a result of the violation of the defendant, including loss of civil rights, economic losses, mental anguish and emotional distress.

**Relief Sought:**     This is an action for declaratory and injunctive relief and damages including reinstatement, back pay, lost fringe benefits, front pay, punitive damages, emotional distress damages based on plaintiff's religion, race or color discrimination and retaliation for plaintiff's engaging in protected activity.

### i) Retaliation under Title VII and CFEPA (MDC Only) Claim.

Defendant MDC, acting through its agents, employees, supervisors administrators and personnel representatives, retaliated against plaintiff when she  complained of illegal and discriminatory actions specified herein, when she sought to exercise her constitutionally protected rights and when she complained of  inappropriate acts and actions of her supervisor. Plaintiff was constantly threatened with termination, cursed at, called offensive names, denied a pay raise to which she was entitled, deprived of the right to return to work, denied right to exercise her religion and/or reasonable accommodation of religious beliefs, suspended, given poor evaluations and undesirable jobs and ultimately forced to quit her job.

**Relief Sought:**  This is an action for declaratory and injunctive relief and damages including reinstatement, back pay, lost fringe benefits, front pay, punitive damages, emotional distress damages based on plaintiff's religion, race or color discrimination and retaliation for

plaintiff's engaging in protected activity.

### iii)  <u>Claim Under 42 U.S.C.§1981:</u>

Plaintiff alleges that the defendant MDC, through its employees and agents engaged in intentional discrimination against plaintiff with respect to her right to make and enforce a contract because of plaintiff's race and opposition to defendant's unlawful employment practices by engaging in the acts alleged in her Second Amended Complaint. The defendants have violated the Civil Rights Act of 1991, 42 U.S.C Section 1981 by interfering with the rights of the plaintiff to make and enforce contracts, by harassing plaintiff, by discriminating against plaintiff in the performance of her employment contract, by terminating plaintiff and by denying plaintiff equal enjoyment of all benefits, privileges, terms, and conditions  of the employment relationship because of her race and protected activities. The violations by the defendants have been knowing and intentional, and they knew or should have known of the injuries to the plaintiff, or they acted with reckless disregard for injuries that would be inflicted upon the plaintiff. The plaintiff has suffered compensable loss as a result of the violations of the defendants, including loss of civil rights, economic losses, mental anguish and emotional distress.

**<u>Relief Sought:</u>**        Plaintiff seeks declaratory and injunctive(including an order that Defendant expunge, erase and remove from plaintiff's personnel file all derogatory  or stigmatic documents referring to poor performance on the part of plaintiff or otherwise keeping the documents on plaintiff's employment record where it could be sent to future prospective employers).  Plaintiff also seeks damages including back pay, lost fringe benefits, punitive damages, emotional distress damages based on plaintiff's race or color discrimination and retaliation for plaintiff's engaging in protected activity.

### iii.  Section 1983 Equal Protection Violation.

The defendants have violated the plaintiff's rights protected under the Equal Protection

Clause to the United States Constitution and enforceable under Section 1983 by interfering with

the rights of the plaintiff to make and enforce contracts, by harassing plaintiff, by discriminating

against plaintiff in the performance of her employment contract, by terminating plaintiff and by

denying plaintiff equal enjoyment of all benefits, privileges, terms, and conditions  of the

employment relationship because of her sex. The plaintiff, compared with others similarly situated,

was selectively treated; and such selective treatment was based on impermissible considerations

such as sex or gender and intent to inhibit or punish the exercise of constitutional rights or

malicious bad faith intent to injure the plaintiff.  The violations by the defendants have been

knowing and intentional, and they knew or should have known of the injuries to the plaintiff, or

they acted with reckless disregard for injuries that would be inflicted upon the plaintiff.  The

plaintiff has suffered compensable loss as a result of the violations of the defendants, including

loss of civil rights, economic losses, mental anguish and emotional distress.

**Relief Sought:**        Plaintiff seeks declaratory and injunctive(including an order that

Defendant expunge, erase and remove from plaintiff's personnel file all derogatory  or stigmatic

documents referring to poor performance on the part of plaintiff or otherwise keeping the

documents on plaintiff's employment record where it could be sent to future prospective

employers).  Plaintiff also seeks damages including back pay, lost fringe benefits, punitive

damages, emotional distress damages based on plaintiff's gender, hostile work environment and

retaliation for plaintiff's engaging in protected activity.

### iv. **Retaliation Under Section 1981**

Defendant's treatment, discipline, harassment, adverse action and discharge of plaintiff

under the circumstances detailed herein was in retaliation for plaintiff engaging in protected

activity and opposition to defendant's unlawful employment practices in violation of plaintiff's

rights secured by 42 U.S.C. Sect. 1981.

**Relief Sought:**       Plaintiff seeks declaratory and injunctive(including an order that

Defendant expunge, erase and remove from plaintiff's personnel file all derogatory  or stigmatic

documents referring to poor performance on the part of plaintiff or otherwise keeping the

documents on plaintiff's employment record where it could be sent to future prospective

employers).  Plaintiff also seeks damages including back pay, lost fringe benefits, punitive

damages, emotional distress damages based on hostile work environment and retaliation for

plaintiff's engaging in protected activity.

### v.        **Family and Medical Leave Act Violation**

 The FMLA provides eligible employees such as Ms. Tammy Richardson, twelve weeks of

unpaid leave each year for a "serious health condition that makes the employee unable to perform

the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D); or for the serious

health condition of the employee. By interfering with, restraining, and denying plaintiff the exercise of rights provided under Act and by discharging Ms. Richardson and otherwise discriminating against her for exercising her rights under the FMLA or opposing practices made unlawful by the Act, defendants have violated the provisions of Sections 104 and 105 of the Act (29 U.S.C. §§ 2614 and 2615). By interfering with, restraining, and denying plaintiff the exercise of rights provided under Act and by discharging Ms. Richardson and otherwise discriminating against her for opposing practices made unlawful by the Act, defendants have violated the provisions of Sections 104 and 105 of the Act (29 U.S.C. §§ 2614 and 2615).     Defendants' violations of the Act were in bad faith. Defendants had no reasonable grounds to believe that their acts and omissions did not violate the Act.

**Relief Sought:**     Plaintiff seeks declaratory and injunctive and damages including back pay, lost fringe benefits, punitive damages, emotional distress damages based on hostile work environment and retaliation for plaintiff's engaging in FMLA- protected activity.

### B.  Statement of the Case:

Plaintiff, Tammy Richardson, is an African-American woman and a practicing Jehovah's witness who was employed by the defendant Metropolitan District Commission (MDC) from 1996 to 1999.  Plaintiff is bringing this action because defendants, acting individually and in their official capacities and under color of law have discriminated against her by harassing her, by denying her equal treatment in her employment on the basis of her race, sex, religion and for

engaging in protected activity. Defendants have retaliated against Ms. Richardson by giving her poor performance evaluations and denying her deserved pay raises, disciplining her and by terminating her employment for filing internal complaints with the MDC and a discrimination complaint with the State of Connecticut commission of Human rights and Opportunities ("CCHRO") and the EEOC. Defendants have subjected Ms. Richardson to terms and conditions of employment different from those applied to white and/or male employees who have not engaged in protected activity, or to employees who are not Jehovah's witnesses, by subjecting her to racial and sex-based harassment, by imposing racially motivated and retaliatory disciplinary measures against her including written reprimand, suspension, withholding of pay, publication of false charges of incompetence, and by constructively terminating her from her position without adequate grounds and without a hearing.  By engaging in acts of intentional race, religion and sex discrimination, retaliation and unlawful harassment in the workplace against Ms. Richardson the defendants have violated her constitutional rights to equal protection under the law.  By further using their supervisory power, discretion and authority to retaliate against Ms. Richardson, to coerce, harass, discipline, suspend and terminate her from her position without just cause the defendants have violated his rights under the 42 US.C. Sec. 1981, 42 U.S.C. Sec. 1983, Title VII of the Civil Rights Act of 1964.

The Plaintiff seeks declaratory and injunctive relief and damages for defendants unlawful actions.


7.      **TRIAL BY MAGISTRATE JUDGE:**

The parties do not consent to a trial before a Magistrate Judge.

8.    **LIST OF WITNESSES**

    **A.    Plaintiff's Witnesses: (Subject to change based on Court's ruling on pending requests/motions)**

    **A list of Plaintiff's witnesses is attached hereto as Exhibit 1.**

**9.    DEPOSITION TESTIMONY**

    Neither party is expected to submit deposition testimony at trial.

**10.    INTERROGATORIES.**

    Neither party is expected to submit interrogatories or requests for admission at trial.

**11.    EXHIBITS**

    A list of Plaintiff's Exhibits is attached hereto as **Exhibit 2.**

**12.    EVIDENTIARY PROBLEMS.**

    No evidentiary problems are anticipated at this stage.

**13.    MOTIONS IN LIMINE.**

    Neither party has filed any Motions In Limine.

**14.    GLOSSARY**

    Neither party will submit any expert testimony as no expert reports were exchanged in accordance with the Court's schedule.

**15.    TRIAL TO JURY**

    **A.    Plaintiff's Proposed Stipulation of Facts.**

Defendants unilaterally and without any good faith attempts to discuss proposed stipulations, filed their Trial Memorandum in Court on December 12, 2003.   Plaintiff submits the following facts for sipulatuion:

1.      The Plaintiff TAMMY RICHARDSON, is a black, African American woman and is a practicing Jehovah's Witness.

2.   The defendant Metropolitan District Commission (MDC),  is a Municipal Authority, within the State of Connecticut, organized and existing pursuant to the laws of the State of Connecticut.

3.  Plaintiff was hired on February 26, 1996 by the MDC as a Senior Clerk/Typist, PT-04 in the Customer Accounting/Risk Services Unit (Treasury Department) of MDC.

4.  On October 26, 1996, plaintiff was promoted to an Account Clerk, PT-05 position in the Treasury department of the MDC.

5.  On September 20, 1997, Ms. Richardson sustained serious injuries in a non-work related automobile accident, which resulted in a 22% permanent disability of the lower back.

6.  As a result of the accident,  Ms. Richardson took a medical leave of absence approved by the MDC for the period September 20, 1997 to December 8, 1997.

7.      On or about October 13, 1998, plaintiff was denied a merit pay increase as a result of a poor performance evaluation given to her that day by her supervisor, Johnson.  Johnson specifically stated the following:  "Tammy *had family leave this year…she was not able to produce a consistent amount of work…Due to the amount of her absenteeism I would recommend that we give this employee another review in six months*. Hopefully a merit increase

would be justified at that time."

8.    Up to September 1998, plaintiff's performance was always rated as satisfactory or above average. The defendant's sole basis for the poor performance evaluation and denial of pay increase was plaintiff's use of an FMLA-qualified leave due to Ms. Richardson's serious injuries.

*9.*    29 U.S.C. §2615 provides that: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise rights under the FMLA, or to discharge or discriminate in any other manner against any individual for opposing any practice made unlawful by the FMLA leave requirements. (29 USCS § 2615(a))." The bar against 'discrimination' prohibits an employer from using the taking of FMLA leave as a negative factor in pay, promotions, disciplinary actions, or other employment actions, or by counting such leave in 'no fault' attendance policies. 29 CFR § 825.220(c).

10.    Defendants have admitted in writing that in October 1998, while Ms. Richardson was out on medical leave, she received an unsatisfactory performance rating allegedly because of "poor attendance" or "absenteeism." Johnson specifically referred to plaintiff's FMLA leave as a negative factor warranting the poor evaluation, probation and denial of merit pay increase.

11.    On or about March 26, 1999 Ms. Richardson filed a complaint against Johnson with the defendants' Human Resources Department. Plaintiff specifically complained about Johnson's sexist actions and discriminatory behavior directed at her.    Ms. Richardson specifically informed Roughan, LeBlanc, McAuliffe and Johnson that Johnson's practice of constantly referring to plaintiff and other women in the office as a "bitch" or "bitches" was offensive and distressing to me, that I considered such language derogatory and discriminatory and unbecoming a supervisor.

12.    On or about March 31, 1999, Ms. Richardson requested and was granted a medical leave of absence because of a serious medical condition.

13.    On or about April 1, 1999, just about five days after Ms. Richardson filed her discrimination complaint against Johnson, Ms. Richardson was once again denied a step increment in her pay by defendants who claimed that her "performance over the six months special review period was "unacceptable."

14.    On June 1, 1999 plaintiff's doctors provided medical information justifying plaintiff's medical leave to defendants as requested by them.

15.    On June 4, 1999 and while plaintiff was out on FMLA leave, McAuliffe demanded that she "immediately provide…medical information" despite the fact that plaintiff's treating doctors had provided said information to defendants and defendants had acknowledged receiving the said information on June 1, 1999.  McAuliffe claimed that Ms. Richardson had failed to "submit the medical information requested. We do not have any indication of the projected length of your absence from work nor do we have any information to indicate that you will be able to return to work..  ….The underlying reasons for your absence appear not to have been addressed. Your medical condition has not been corrected."  McAuliffe also stated "Please immediately provide the previously requested medical information.  Failure to respond to this request jeopardizes your employment relationship with the Metropolitan District." Id.

16.    When Ms. Richardson reported to work on July 1, 1999, Johnson refused to allow her the opportunity to work and sent her home.  Johnson stated that the note from plaintiff's doctor was not sufficient because defendants "needed to know what type of treatment" plaintiff had received.

17.     On or about July 20, 1999 plaintiff filed an internal grievance complaining of the discriminatory conduct by Johnson. The Defendants claim to have investigated the matter and concluded that Johnson was not harassing plaintiff even though they admitted that he used "profanity" in the work-place.

18.     On or about July 28. 1999 plaintiff received the letter from Norman LeBlanc. LeBlanc's letter stated that plaintiff's absence from work on Friday, July 23, 1999 was unauthorized "since you had previously been denied the day off by your supervisor, Jeffrey Johnson." Id.   By defendants' own admission, July 23, 1999 was one of the days on which plaintiff was supposed to leave work early and on which she was required to see her doctor to receive needed medical care.  LeBlanc's letter further stated "***In addition., you were informed that your doctor's medical return to work slip dated July 9, 1999 requested continued care twice weekly which did not support your leaving early every day from July 12, 1999 through July 21, 1999.  Your actions are serious violations of work policy and are not acceptable.  Consequently, this letter will confirm your two day suspension of July 26***th and July 27, 1999. Any future incident of this type will warrant more severe disciplinary action, to possibly include the termination of your employment."

19.     On or about August 6, 1999, plaintiff filed her discrimination complaint with the CCHRO and EEOC.

20.     On August 30, 1999 plaintiff received another letter from the defendant in which she was informed that "you did not receive a step increment with your October 1998, performance rating, we have reviewed your performance over the last six months.  The six month period would have concluded in the last part of April, 1999, but you were absent from work starting March 30,

1999....Your overall performance remains at the "marginal/needs improvement" level.   A step

increase will not be granted."

21.    On November 3, 1999, Ms. Richardson took a medical leave of absence due to her

physical injuries and psychological stress.


**B.    Proposed Voir Dire Questions**

Plaintiff's proposed voir dire questions are attached hereto as **Exhibit 3.**

**C.    Proposed Jury Instructions.**

Plaintiff's proposed jury instructions are attached hereto as **Exhibit 4.**


**PLAINTIFF**

_____

Paul M. Ngobeni
**LAW OFFICES OF PAUL M. NGOBENI**
914 Main Street, Suite 206
East Hartford, CT 06108
Telephone (860) 289-3155
Facsimile (860) 282-7479

**<u>CERTIFICATION</u>**

This is to certify that a copy of the foregoing was mailed first-class on December 29, 2003 to:

ANTHONY PALERMINO
945 Wethersfield Ave.
Hartford, CT. 06114

-------------------------------------------------------
Paul M. Ngobeni