UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TAMMY RICHARDSON            )<br>      Plaintiff                           )<br>vs.                                              )<br>METROPOLITAN DISTRICT   )<br>COMMISSION, et al.              )<br>      Defendant                        )<br>                                                    ) | Civil Action No.<br>3:00 CV 1062(JCH)<br><br><br><br>JANUARY 21, 2004. |

**PLAINTIFF'S VERIFIED MOTION TO JOIN THE NEIL OSSEN, BANKRUPTCY TRUSTEE OR HIS SUCCESSOR AS PARTY-PLAINTIFF, OR IN THE ALTERNATIVE, MOTION TO SUBSTITUTE SAID TRUSTEE AS PURPORTED REAL PARTY IN INTEREST AND MOTION TO ORDER RATIFICATION BY TRUSTEE.**

Plaintiff, TAMMY RICHARDSON, hereby moves this Court to join the Bankruptcy Trustee, Neil Ossen, or his successor, as a plaintiff party to this case under Fed. R. Civ. Proc. 17(a). In the alternative, plaintiff requests that this Court order ratification by, or substitution of the Trustee as real party in interest. In support of her Motion, plaintiff states the following:

1. **This Court is Without Jurisdiction to Adjudicate the Rights of the Trustee (A Non-Party)**: Plaintiff commenced her lawsuit against the defendant MDC pro se, on or about November 2000. On March 19, 2001, while the above-entitled federal lawsuit was pending, plaintiff filed a voluntary petition for Chapter 7 bankruptcy. She was represented by an attorney other than the one representing her in this action. Plaintiff duly listed the proceedings or ongoing litigation against the defendant MDC in her schedule of property. This Court must note that *the defendant MDC was also one of plaintiff's creditors and as such was duly notified of the bankruptcy proceedings every step of the way*. On April 30, 2001, the first creditors meeting was held and *the MDC was the only creditor present at the meeting*. Plaintiff duly informed the trustee and the bankruptcy court of her lawsuit against the MDC.

The trustee purported to exercise his rights by objecting to plaintiff's claimed exemptions (including the lawsuit) listed in her petition. On July 10, 2001, the bankruptcy court entered an order discharging plaintiff's debts, pursuant to 11 U.S.C. § 727. At no time did the trustee file a motion to intervene in this action pursuant to Fed.R.Civ.P. 24(a). As of March 2001, the bankruptcy trustee had the right and the obligation to intervene in the lawsuit and to prosecute the above-entitled action diligently. The trustee chose not to file an appearance in the matter and never filed responsive pleadings or opposition of any kind to the numerous motions filed by the defendants.

Because the trustee is, and has elected to remain, a nonparty, the Court has no jurisdiction to adjudicate his rights. This is especially true where there exists solid evidence of the waiver of these supposed rights. **"The principle that courts lacking jurisdiction over litigants cannot adjudicate their rights is elementary**...." In re Sealed Case, 141 F.3d 337, 341 (D.C. Cir. 1998).

    2.    **Trustee's Lackadaisical Approach and Failure to Act:** Despite his belated off-the-record suggestion to the parties that the lawsuit was an asset of the bankrupt estate, the trustee never filed a motion to intervene in this action pursuant to Fed.R.Civ.P. 24(a). As of March 2001, the bankruptcy trustee had the right and the obligation to intervene in the lawsuit and to prosecute the above-entitled action diligently. The trustee never filed an appearance in the matter and never filed responsive pleadings or opposition of any kind to the following dilatory motions filed by the defendants after the April 30, 2001 creditor's meeting: *October 18, 2001 (Defendants' Motion to Dismiss), November 20, 2001 (Defendants' Objection to Plaintiff's Opposition to Motion to Dismiss And Request to Deny Motion as Moot); November 21, 2001 (Defendant Jeffrey Johnson's Motion to Dismiss); March 8, 2002*

*(Defendants' Motion for Summary Judgment); April 9, 2002 (Defendants' Objection to Plaintiff's Motion for Partial Summary Judgment); May 20, 2002 ( Defendants' Objection to Plaintiff's Motion for Leave to File Motion for Summary Judgment Out of Time); June 3, 2002 (Defendants' Response to Second Amended Complaint) June 3, 2002 (Special Defenses of the Metropolitan District Commission and Jeffrey Johnson); June 3, 2003 (Defendants' Objection and Reply to Plaintiff's Response to Summary Judgment and Its Motion to Strike); and November 22, 2002 (Defendants' Motion for Summary Judgment).* Most important the trustee never complied with any of the Court orders (all very time-sensitive) issued in this matter. Around September 2003, this Court issued Pre-trial orders as well as an order referring the above case to the Honorable Magistrate Judge Holly B. Fitzsimmons for settlement purposes. Amongst the orders issued by Judge Fitzsimmons in preparation for the eventual settlement conference was an order that the parties engage in serious settlement discussions amongst themselves in an effort to resolve the matter. Plaintiff duly requested a face-to-face meeting; defendants acceded to the said request and the parties eventually met at Attorney Palermino's office on November 13, 2003. Although the trustee had been duly notified of the Court order and the meeting of November 13,2003, he chose to boycott the said meeting and therefore scuttled a process that was carefully designed by this Court in the interest of justice to bring the lawsuit to an amicable conclusion. The defendant, having conducted self-serving off the record discussions with the trustee, simply went through the motions and stated that they could not make any meaningful offer absent the involvement of the trustee.

    3.    **Abandonment of the Lawsuit By The Trustee:** It is also a matter of record that the trustee, who must prove (for better or for worse) in an employment discrimination case, the same facts whether the case was prosecuted by the debtor or her trustee in bankruptcy, has

chosen not to speak to the plaintiff or her attorney during the entire three year period (2001 - 2004) when the matter was pending.  The truth of the matter is that the trustee originally misvalued the lawsuit as an asset and abandoned it by not administering the asset or managing the lawsuit as he was obligated to do.   Relying on the trustee's actions, plaintiff employed her own resources and tenaciously pursued the lawsuit running the gauntlet of repeated motions to dismiss and several motions for summary judgment filed by the equally determined MDC.   Although the trustee opportunistically suggested to the parties off the record that the plaintiff's claim against the MDC was "an asset" belonging to the bankrupt estate, he never entered an appearance on the record in this Court and has adamantly refused to speak to plaintiff and her counsel.   The trustee's actions in popping up on the eve of trial and purporting to exercise authority over an asset he clearly abandoned smacks of bad faith, collusive dealings with the defendant MDC which is also a creditor in plaintiff's bankruptcy case, and   gross dereliction of duty by an arm of this Court and thus threaten to bring the administration of justice into disrepute.  Federal courts are efficient, businesslike, extremely deadline-oriented while at the same time fairly administering justice to those who seek it.   It would be incongruous for this Court to maintain that a bankruptcy trustee (who engages in a Rip-van-Winkle-like "litigation strategy") may, without regard to his fiduciary duties, safely ignore a pending lawsuit for an entire three year period while the debtor devotes her meager resources to battle a recalcitrant defendant who also happens to be her creditor.   This Court cannot countenance a situation where the slumbering trustee emerge from his convenient mountain hide-out or cave (not due to the sound of B-52 bombers dropping lethal bombs but because he smells and sees the almighty dollar down in the valley) only to impede the business of this Court through dilatory and self-serving motions filed by the defendants on

his behalf. This Court's sanctioning of that type of tactic would be devastating to the less than diligent litigants whose cases are appropriately dismissed from the dormancy list with regularity for delays of only a few months in meeting deadlines or complying with Court orders. Both the trustee and the defendant MDC know that the defendants waived the very defenses they now seek to invoke on the eleventh hour to delay the plaintiff's case.

Generally, mistakes in valuation will not enable a trustee to recover an abandoned asset," not even upon "subsequent discovery that the property has a greater value than previously believed." In re McGowan, 95 B.R. 104, 106 (Bankr.N.D.Iowa 1988); accord In re DeVore, 223 B.R. 193, 197 (B.A.P. 9th Cir. 1998) (recognizing the "general rule that abandonment is irrevocable"). Even if the plaintiff's lawsuit is deemed as having been transferred to the estate in bankruptcy by operation of law when Ms. Richardson filed for bankruptcy, the facts clearly show that the property was abandoned by the trustee. Plaintiff can sue in her own name to enforce it, because the effect of a trustee's abandoning a claim is to revest the ownership of it in the debtor. Plaintiff points to solid irrefutable evidence of the trustee's complete failure to "administer" the lawsuit or to manage it in any way. No doubt the trustee wanted and intended to abandon plaintiff's claim. It should not matter that the trustee failed to comply with the statutory requirements (11 U.S.C. § 554) for abandoning an asset that is part of the debtor's estate. There is an alternative basis for rejecting the defendants' challenge to plaintiff's standing. The steps that the trustee took to abandon Ms. Richardson's claim would suffice to establish abandonment under the ordinary principles applicable to abandonment, e.g., United States v. Locke, 471 U.S. 84, 98 (1985); Vieux v. East Bay Regional Park District, 906 F.2d 1330, 1341 (9th Cir. 1990); People ex rel. Illinois Historic Preservation Agency v. Zych, 710 N.E.2d 820, 825 (Ill. 1999), a fundamental doctrine of

property law.

4. **The Doctrine of Laches Prevent Trustee from Arrogating to Himself The Right to Settle this Lawsuit**: The equitable origins and character of bankruptcy point to latches as the proper doctrinal guide to cutting off belated efforts by a lackadaisical trustee to intervene in or to hijack a lawsuit he has ignored for three years . See, e.g.,Hawxhurst v. Pettibone Corp., 40 F.3d 175, 181 (7th Cir. 1994); In re Centric Corp., 901 F.2d 1514, 1519 (10th Cir. 1990). Laches requires a showing of (1) unwarranted delay (2) prejudicial to the party opposing the reopening, e.g., National R.R. Passenger Corp. v. Morgan, 122 S.Ct. 2061, 2077 (2002); Cox v. McBride, 279 F.3d 492, 494 (7th Cir. 2002), and might well bar the trustee's belated efforts here, because of the combination of the creditors and trustee's complete inexcusable failure to pursue the revelation at their creditor's meeting that Ms. Richardson had a legal claim with the prejudice to plaintiff's suit should the creditors or trustee at this late date seek to intervene to take back a chunk of it. An effort by the trustee or creditors at this late date to seize plaintiff's legal claim is barred by the doctrine of latches. No one can be said to have a higher title to the claim than Ms. Richardson, so that if she lacks standing, no one has standing.

5. **The Trustee's Action Evidence Ratification of Plaintiff's Right to Pursue this Lawsuit:** Rule 17(a) plainly permits a real party in interest to assign its rights, waive any interest that it may have in the outcome of the suit, and ratify the commencement of the suit by another. See,e.g., Wells Fargo Northwest Bank. N.A. v. Varig-S.A., No. 02 Civ.6078 (JSR), 2003 WL 21508341, at *3 (S.D.N.Y. June 27, 2003)[1] . "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account,

---

[1] Ratification is "the adoption,confirmation or failure to repudiate prior unlawful acts which were not legally binding at a time when the [defendant] had the right and knowledge of facts necessary to repudiate such conduct; but which, by ratification or by the failure to repudiate, become the acts of the defendant." *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 653 (5th Cir. 1994).

whereby the act . . . is given effect as if originally authorized by him." ***Restatement (Second) of Agency § 82***. "Affirmance is either (a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or (b) conduct by him justifiable only if there were such an election." Id. at § 83. Likewise under Connecticut law "Ratification is defined as the affirmance by a person of a prior act which did not bind him, but which was done or professedly done on his account. . . . Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances. " Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 185 (1986).  Ratification is determined on the basis of the principal's knowledge of the transaction and its actions in light of that knowledge.  By accepting the benefits of the lawsuit against the MDC (which were made possible only by plaintiff's diligent pursuit of her lawsuit for almost three years in lieu of the lackadaisical trustee), the trustee ratified what may have arguably been a voidable contract and affirmed plaintiff's legal right or duty to manage the lawsuit which has resulted in a windfall to the bankrupt estate.  Rule 17 specifically requires that before an action can be dismissed at a defendant's behest, the court must allow a reasonable time for ratification by, or joinder of, the real party in interest.

     6.     **<u>Defendants' Waiver of "Real Party In Interest" Objection:</u>** Defendants waived the instant objection by not raising it at the earliest opportunity they had.  Given that defendants are asserting that Ms. Richardson is not the real party in interest, see Fed.R.Civ.P. 17(a), failure to raise this defense before trial would clearly constitute waiver of the defense.  As stated above, the defendant MDC was one of the creditors in the bankruptcy proceedings and was intimately familiar with all of the facts and circumstances involving plaintiff and he lawsuits. The MDC was the only creditor present at the April 30, 2001 creditor's meeting.  On

October 18, 2001, defendants filed "Defendants' Motion to Dismiss) without raising the failure to name the real party in interest objection.  Thereafter, defendants filed the following pleadings wherein they missed their opportunity to assert the said objection:  November 20, 2001 (Defendants' Objection to Plaintiff's Opposition to Motion to Dismiss And Request to Deny Motion as Moot); November 21, 2001 (Defendant Jeffrey Johnson's Motion to Dismiss); March 8, 2002 (Defendants' Motion for Summary Judgment); April 9, 2002 (Defendants' Objection to Plaintiff's Motion for Partial Summary Judgment); May 20, 2002 ( Defendants' Objection to Plaintiff's Motion for Leave to File Motion for Summary Judgment Out of Time); June 3, 2002 (Defendants' Response to Second Amended Complaint) June 3, 2002 (Special Defenses of the Metropolitan District Commission and Jeffrey Johnson); June 3, 2003 (Defendants' Objection and Reply to Plaintiff's Response to Summary Judgment and Its Motion to Strike); and November 22, 2002 (Defendants' Motion for Summary Judgment).  The first time defendants mentioned their objection was in the Trial Memorandum.  Under well-settled authority MDC raised the issue in an untimely manner, and the issue is waived.

    7.    **The Savings Provisions of Rule 17(a) Apply.**

Rule 17(a) of the Federal Rules of Civil Procedure provides that "[e]very action shall be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a). See also <u>Rogers v. Samedan Oil Corp</u>., 308 F.3d 477, 483 (5th Cir. 2002). However, Rule 17(a) also provides that:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest.

FED. R. CIV. P. 17(a). See <u>Wieburg v. GTE Southwest, Inc.</u>, 272 F.3d 302, 308-09 (5th Cir. 2001) (holding that it was abuse of discretion under Rule 17(a) for the district court to dismiss for

lack of standing "without explaining why the less drastic alternatives of either allowing an opportunity for ratification . . . or joinder . . . were inappropriate").  Any ratification, joinder, or substitution under Rule 17(a) "shall have the same effect as if the action had been commenced in the name of the real party in interest." FED. R. CIV. P. 17(a). See <u>Ratner v. Sioux Natural Gas Corp.</u>, 770 F.2d 512, 520 (5th Cir. 1985). In <u>Wieburg v. GTE Southwest Inc</u>., 272 F.3d 302, 308 (5th Cir. 2001) the court took into account that the Trustee had not brought action where dismissal of the pending action after statute of limitations had expired meant creditors had no possibility of any recovery.  Furthermore, the courts have allowed substitution under Rule 17(a) where to do so would be to prevent forfeiture and injustice. Id.

    **8.**    **The Lawsuit Encompasses Plaintiff's Rights Which Can Never Be Part of the Bankrupt Estate.**

And finally, this Court should absolutely refuse to stay or dismiss this action for the following additional reasons.   Property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). This broad category includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, *except such as are earnings from services performed by an individual debtor after the commencement of the case.*" §541(a)(6).  Thus, postpetition revenues belong to the estate only to the extent they are based on pre-petition services.  To the extent that plaintiff may be entitled to moneys representing earnings from services she performed or would have performed at MDC after the March 19, 2001 filing of the petition, such "back pay" for this period may not be assets of the bankrupt estate.  Certainly her right to job reinstatement with the attendant rights to "*earnings from services performed by an individual debtor after the commencement of the case*" are prospective injunctive relief that

cannot be bargained away by the trustee in the manner suggested by the defendants. Plaintiff seeks job reinstatement which is prospective injunctive relief to prevent an ongoing violation of federal law. Courts have found in prior employment cases that reinstatement constitutes prospective injunctive relief.  It cannot be said with certainty that the plaintiff has an adequate remedy at law simply because the MDC has made a self-serving "$100 000 offer" to the trustee.   If rehired, plaintiff would have worked until age 65 at the foreseeable high salary and pension increases of an MDC employee.   Accordingly, the trustee who by clear and convincing evidence in this case has sat on his purported rights while a litigation battle was raging between the parties may have severely undercut or undermined plaintiff's bargaining position and caused her irreparable injury.

**WHEREFORE,** plaintiffs request that this Court order that the Bankruptcy trustee, Neil Ossen or his successor be joined as a co-plaintiff party to this case under Fed. R. Civ. Proc. 17. Given clear evidence that the real party in interest objection was waived, and other objection could be cured, short of stay or dismissal, by ratification, joinder, or substitution of the real party in interest.

**PLAINTIFF**

*Paul M. Ngobeni*
Paul M. Ngobeni, ct08187
**LAW OFFICES OF PAUL M. NGOBENI**
914 Main Street, Suite 206
East Hartford, CT 06108
Telephone (860) 289-3155
Facsimile (860) 282-7479

## CERTIFICATION

This is to certify that a copy of the foregoing **VERIFIED MOTION TO JOIN THE NEIL OSSEN, BANKRUPTCY TRUSTEE OR HIS SUCCESSOR AS PARTY-PLAINTIFF, OR IN THE ALTERNATIVE, MOTION TO SUBSTITUTE SAID TRUSTEE AS PURPORTED REAL PARTY IN INTEREST AND MOTION TO ORDER RATIFICATION BY TRUSTEE** was mailed first-class on January 21, 2004 to:

ANTHONY PALERMINO
945 Wethersfield Ave.
Hartford, CT. 06114


Paul M. Ngobeni