**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **TAMMY RICHARDSON** ) | |
| **Plaintiff** ) | **Civil Action No.** |
| **vs.** ) | **3:00 CV 1062(JCH)** |
| **METROPOLITAN DISTRICT** ) | |
| **COMMISSION, et al.** ) | |
| **Defendant** ) | |
| ) | **JANUARY 21, 2004.** |

**PLAINTIFF'S  MEMORANDUM OF LAW IN SUPPORT OF VERIFIED MOTION TO JOIN THE NEIL OSSEN, BANKRUPTCY TRUSTEE OR HIS SUCCESSOR AS PARTY-PLAINTIFF, OR IN THE ALTERNATIVE, MOTION TO SUBSTITUTE SAID TRUSTEE AS PURPORTED REAL PARTY IN INTEREST AND MOTION TO ORDER RATIFICATION BY TRUSTEE.**

**I.**  **Statement of Facts:**

Plaintiff, TAMMY RICHARDSON,  moves this Court to join the Bankruptcy Trustee, Neil Ossen, or his successor, as a plaintiff party to this case under Fed. R. Civ. Proc. 17(a). In the alternative, plaintiff requests that this Court order ratification by, or substitution of the Trustee as real party in interest.   Plaintiff commenced her lawsuit against the defendant MDC pro se, on or about November 2000.   On March 19, 2001, while the above-entitled federal lawsuit was pending, plaintiff filed a voluntary petition for Chapter 7 bankruptcy. She was represented by an attorney other than the one representing her in this action. Plaintiff duly listed the proceedings or ongoing litigation against the defendant MDC in her schedule of property. This Court must note that ***the defendant MDC was also one of plaintiff's creditors and as such was duly notified of the bankruptcy proceedings every step of the way***.   On April 30, 2001, the first creditors meeting was held and ***the MDC was the only creditor present at the meeting***. Plaintiff duly informed the trustee and the bankruptcy court of her lawsuit against the MDC. The trustee purported to

exercise his rights by objecting to plaintiff's claimed exemptions (including the lawsuit) listed in her petition.   On July 10, 2001, the bankruptcy court entered an order discharging plaintiff's debts, pursuant to 11 U.S.C. § 727.        At no time did the trustee file a motion to intervene in this action pursuant to Fed.R.Civ.P. 24(a).  As of March 2001, the bankruptcy trustee had the right and the obligation to intervene in the lawsuit and to prosecute the above-entitled action diligently. The trustee chose not to file an appearance in the matter and never filed responsive pleadings or opposition of any kind to the numerous motions filed by the defendants.   Because the trustee is, and has elected to remain, a nonparty, the Court has no jurisdiction to adjudicate his rights.  This is especially true where there exists solid evidence of the waiver of these supposed rights.

Despite his belated off-the-record suggestion to the parties that the lawsuit was an asset of the bankrupt estate,  the trustee never filed a motion to intervene in this action pursuant to Fed.R.Civ.P. 24(a).  As of March 2001, the bankruptcy trustee had the right and the obligation to intervene in the lawsuit and to prosecute the above-entitled action diligently.   The trustee never filed an appearance in the matter and never filed responsive pleadings or opposition of any kind to the following dilatory motions filed by the defendants after the April 30, 2001 creditor's meeting:  *October 18, 2001 (Defendants' Motion to Dismiss), November 20, 2001 (Defendants' Objection to Plaintiff's Opposition to Motion to Dismiss And Request to Deny Motion as Moot); November 21, 2001 (Defendant Jeffrey Johnson's Motion to Dismiss); March 8, 2002 (Defendants' Motion for Summary Judgment); April 9, 2002 (Defendants' Objection to Plaintiff's Motion for Partial Summary Judgment); May 20, 2002 ( Defendants' Objection to Plaintiff's Motion for Leave to File Motion for Summary Judgment Out of Time); June 3, 2002 (Defendants' Response to Second Amended Complaint) June 3, 2002 (Special Defenses of the Metropolitan District Commission and Jeffrey Johnson); June 3, 2003 (Defendants' Objection*

*and Reply to Plaintiff's Response to Summary Judgment and Its Motion to Strike); and*

*November 22, 2002 (Defendants' Motion for Summary Judgment).*  Most important the trustee

never complied with any of the Court orders (all very time-sensitive) issued in this matter.  Around

September 2003, this Court issued Pre-trial orders as well as an order referring the above case to

the Honorable Magistrate Judge Holly B. Fitzsimmons for settlement purposes.  Amongst the

orders issued by Judge Fitzsimmons in preparation for the eventual settlement conference was an

order that the parties engage in serious settlement discussions amongst themselves in an effort to

resolve the matter.   Plaintiff duly requested a face-to-face meeting; defendants acceded to the

said request and the parties eventually met at Attorney Palermino's office on November 13, 2003.

Although the trustee had been duly notified of the Court order and the meeting of November

13,2003, he chose to boycott the said meeting and therefore scuttled a process that was carefully

designed by this Court in the interest of justice to bring the lawsuit to an amicable conclusion.

The defendant, having conducted self-serving off the record discussions with the trustee, simply

went through the motions and stated that they could not make any meaningful offer absent the

involvement of the trustee.

It is also a matter of record that the trustee, who must prove (for better or for worse) in an

employment discrimination case, the same facts  whether the case was prosecuted by the debtor

or her trustee in bankruptcy, has chosen not to speak to the plaintiff or her attorney during the

entire three year period (2001 - 2004) when the matter was pending.  The truth of the matter is that

the trustee originally misvalued the lawsuit as an asset and abandoned it by not administering the

asset or managing the lawsuit as he was obligated to do.    Relying on the trustee's actions,

plaintiff employed her own resources and tenaciously pursued the lawsuit running the gauntlet of

repeated motions to dismiss and several motions for summary judgment filed by the equally

determined MDC.   Although the trustee opportunistically suggested to the parties off the record

that the plaintiff's claim against the MDC was "an asset" belonging to the bankrupt estate, he

never entered an appearance on the record in this Court and has adamantly refused to speak to

plaintiff and her counsel.   The trustee's actions in popping up on the eve of trial and purporting

to exercise authority over an asset he clearly abandoned smacks of bad faith, collusive dealings

with the defendant MDC which is also a creditor in plaintiff's bankruptcy case, and   gross

dereliction of duty by an arm of this Court and thus threaten to bring the administration of justice

into disrepute.  Federal courts are efficient, businesslike, extremely deadline-oriented while at the

same time fairly administering justice to those who seek it.   It would be incongruous for this Court

to maintain that a bankruptcy trustee (who engages in a Rip-van-Winkle-like "litigation strategy")

may, without regard to his fiduciary duties, safely ignore a pending lawsuit for an entire three year

period while the debtor devotes her meager resources to battle a recalcitrant defendant who also

happens to be her creditor.   This Court cannot countenance a situation where the slumbering

trustee emerge from his convenient mountain hide-out or cave (not due to the sound of B-52

bombers dropping lethal bombs but because he smells and sees the almighty dollar down in the

valley) only to impede the business of this Court through dilatory and self-serving motions filed

by the defendants on his behalf.  This Court's sanctioning of that type of tactic would be

devastating to the less than diligent litigants whose cases are appropriately dismissed from the

dormancy list with regularity for delays of only a few months in meeting deadlines or complying

with Court orders.   Both the trustee and the defendant MDC know that the defendants waived

the very defenses they now seek to invoke on the eleventh hour to delay the plaintiff's case.

Even if the plaintiff's lawsuit is deemed as having been transferred to the estate in bankruptcy by

operation of law when Ms. Richardson filed for bankruptcy, the facts clearly show that the

property was abandoned by the trustee.  Plaintiff can sue in her own name to enforce it, because the effect of a trustee's abandoning a claim is to revest the ownership of it in the debtor. Plaintiff points to solid irrefutable evidence of the trustee's complete failure to "administer" the lawsuit or to manage it in any way.   No doubt the trustee wanted and intended to abandon plaintiff's claim. It should not matter that the trustee failed to comply with the statutory requirements  (11 U.S.C. § 554) for abandoning an asset that is part of the debtor's estate. There is an alternative basis for rejecting the defendants' challenge to plaintiff's standing. The steps that the trustee took to abandon Ms. Richardson's claim would suffice to establish abandonment under the ordinary principles applicable to abandonment, e.g., United States v. Locke, 471 U.S. 84, 98 (1985); Vieux v. East Bay Regional Park District, 906 F.2d 1330, 1341 (9th Cir. 1990); People ex rel. Illinois Historic Preservation Agency v. Zych, 710 N.E.2d 820, 825 (Ill. 1999), a fundamental doctrine of property law.

    The equitable origins and character of bankruptcy point to latches as the proper doctrinal guide to cutting off belated efforts by a lackadaisical trustee to intervene in or to hijack a lawsuit he has ignored for three years .    Furthermore,  Rule 17(a) plainly permits a real party in interest to assign its rights, waive any interest that it may have in the outcome of the suit, and ratify the commencement of the suit by another.  Rule 17 specifically requires that before an action can be dismissed at a defendant's behest, the court must allow a reasonable time for ratification by, or joinder of, the real party in interest.

    Defendants waived the instant objection by not raising it at the earliest opportunity they had.  Given that defendants are asserting that Ms. Richardson is not the real party in interest, see Fed.R.Civ.P. 17(a), failure to raise this defense before trial would clearly constitute waiver of the defense.  As stated above, the defendant MDC was one of the creditors in the bankruptcy

proceedings and was intimately familiar with all of the facts and circumstances involving plaintiff

and he lawsuits. The MDC was the only creditor present at the April 30, 2001 creditor's meeting.

On October 18, 2001, defendants filed "Defendants' Motion to Dismiss) without raising the failure

to name the real party in interest objection.    Thereafter, defendants filed the a series of Rule 12

Motions wherein they missed their opportunity to assert the said objection.   The first time

defendants mentioned their objection was in the Trial Memorandum.    Under well-settled

authority MDC raised the issue in an untimely manner, and the issue is waived forever.

   Rule 17(a) of the Federal Rules of Civil Procedure provides that "[e]very action shall be

prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a). See also Rogers v.

Samedan Oil Corp., 308 F.3d 477, 483 (5th Cir. 2002). However, Rule 17(a) also provides that:

> No action shall be dismissed on the ground that it is
> not prosecuted in the name of the real party in
> interest until a reasonable time has been allowed
> after objection for ratification of commencement of
> the action by, or joinder or substitution of, the real
> party in interest.

FED. R. CIV. P. 17(a).  When faced with a  Rule 17(a) objection for lack of standing , a district court

must consider the less drastic alternatives of allowing an opportunity for ratification, joinder, or

substitution under Rule 17(a).   If granted by the Court substitution "shall have the same effect as

if the action had been commenced in the name of the real party in interest." FED. R. CIV. P. 17(a).


## II.    Argument.

### A. This Court is Without Jurisdiction to Adjudicate the Rights of the Trustee (A Non-Party):

   Because the trustee is, and has elected to remain, a nonparty, the Court has no jurisdiction

to adjudicate his rights.  This is especially true where there exists solid evidence of the waiver of

these supposed rights.  **"The principle that courts lacking jurisdiction over litigants  cannot adjudicate their rights is elementary**...."  <u>In re Sealed Case,</u> 141 F.3d 337, 341 (D.C. Cir. 1998).

     B.    **Trustee's Lackadaisical Approach, Failure to Act And Abandonment of the Lawsuit Precludes The Court from Considering His Alleged Interests:**

       On July 10, 2001, the bankruptcy court entered an order discharging plaintiff's debts, pursuant to 11 U.S.C. § 727. Plaintiff recognizes that her cause of action for monetary damages was property of the bankruptcy estate.  See <u>United States ex.rel. Gebert v. Transport Admin. Services,</u> 260 F.3d 909, 913 (8th Cir. 2001) (property of bankruptcy estate includes all causes of action debtor could have brought at time of bankruptcy petition)[1] . However, the trustee never filed a motion to intervene in this action pursuant to Fed.R.Civ.P. 24(a).  As of March 2001, the bankruptcy trustee had the right and the obligation to intervene in the lawsuit and to prosecute the above-entitled action diligently. When a trustee prosecutes a right of action derived from the debtor, the trustee stands in the shoes of the debtor. In other words, the trustee must prove all elements of the cause of action that the debtor himself would be required to prove. *Matter of Segerstrom,* 247 F.3d 218, 224 (5th Cir. 2001). See also *Matter of Armstrong*, 206 F.3d 465, 472 (5th Cir. 2000) ("Generally, the trustee acquires the same right to file a refund claim that the debtor had.") (citing *Hays & Co. v. Merrill Lynch Pierce Fenner & Smith*, 885 F.2d 1149, 1154 (3d Cir. 1989)); *Educators Group Health Trust*, 25 F.3d at 1286 ("It is well-established that the bankruptcy

---

[1] When Ms. Richardson filed for relief under Chapter 7 of the Bankruptcy Code, a bankruptcy estate was created. That estate was comprised of all the property listed under section 541, wherever located and by whomever held, including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. ¶541(a)(1). Section 541(a)(1)'s reference to "all legal or equitable interests of the debtor in property" includes causes of action belonging to Ms. Richardson at the time the Chapter 7 proceeding was commenced. *Matter of Equinox Oil Company, Inc.,* 300 F.3d 614, 618 (5th Cir. 2002); *Matter of Educators Group Health Trust,* 25 F.3d 1281, 1283-84 (5th Cir. 1994); *see also United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9 (1983)(quoting the House and Senate Reports on the Bankruptcy Code).

estate succeeds to the causes of action which the debtor could have brought as of the commencement of the case, subject to any defenses the debtor may have faced."); *Century Hotels v. United States*, 952 F.2d 107, 113 n.h (5th Cir. 1992) ("Similar statements to the effect that ¶ 541(a)(1) does not expand the rights of the debtor in the hands of the estate were made in the context of describing the principle that the estate succeeds to no more or greater causes of action against third parties than those held by the debtor.") (citing HR. Rep.No. 95-595, pp. 367-368 (1977)). Cf. *Wieburg v. GTE Southwest Incorporated*, 272 F.3d 302, 303-09 (5th Cir. 2001) (implicitly recognizing that, in an employment discrimination case, the same facts would have to be proved whether the case was prosecuted by the debtor or her trustee in bankruptcy).

The trustee never filed an appearance in the matter and never filed responsive pleadings or opposition of any kind to the following dilatory motions filed by the defendants after the April 30, 2001 creditor's meeting. Most important the trustee never complied with any of the Court orders (all very time-sensitive) issued in this matter. Around September 2003, this Court issued Pre-trial orders as well as an order referring the above case to the Honorable Magistrate Judge Holly B. Fitzsimmons for settlement purposes. Amongst the orders issued by Judge Fitzsimmons in preparation for the eventual settlement conference was an order that the parties engage in serious settlement discussions amongst themselves in an effort to resolve the matter. Plaintiff duly requested a face-to-face meeting; defendants acceded to the said request and the parties eventually met at Attorney Palermino's office on November 13, 2003. Although the trustee had been duly notified of the Court order and the meeting of November 13,2003, by defendants, he chose to boycott the said meeting and therefore scuttled a process that was designed by this Court in the interest of justice to bring the lawsuit to an amicable conclusion. The defendant, having conducted self-serving off the record discussions with the trustee, simply went through

the motions and stated that they could not make any meaningful offer absent the involvement of the trustee.  It is also a matter of record that the trustee, who must prove (for better or for worse) in an employment discrimination case, the same facts  whether the case was prosecuted by the debtor or her trustee in bankruptcy, has chosen not to speak to the plaintiff or her attorney during the entire three year period (2001 - 2003) when the matter was pending.

The truth of the matter is that the trustee originally misvalued the lawsuit as an asset and abandoned it by not administering the asset or managing the lawsuit as he was obligated to do. Relying on the trustee's actions, plaintiff employed her own resources and tenaciously pursued the lawsuit running the gauntlet of repeated motions to dismiss and several motions for summary judgment filed by the equally determined MDC.   Although the trustee opportunistically suggested to the parties off the record that the plaintiff's claim against the MDC was "an asset" belonging to the bankrupt estate, he never entered an appearance on the record in this Court and has adamantly refused to speak to plaintiff and her counsel.   The trustee's actions in popping up on the eve of trial and purporting to exercise authority over an asset he clearly abandoned smacks of bad faith, collusive dealings with the defendant MDC which is also a creditor in plaintiff's bankruptcy case, and   gross dereliction of duty by an arm of this Court and thus threaten to bring the administration of justice into disrepute.

Federal courts are efficient, businesslike, extremely deadline-oriented while at the same time fairly administering justice to those who seek it.   It would be incongruous for this Court to maintain that a bankruptcy trustee (who engages in a Rip-van-Winkle-like "litigation strategy") may, consistent with his fiduciary duties, safely ignore a pending lawsuit for an entire three year period while the debtor devotes her meager resources to battle a recalcitrant defendant who also happens to be her creditor.   This Court cannot countenance a situation where the slumbering

trustee emerge from his convenient mountain hide-out or cave (not due to the sound of B-52 bombers dropping lethal bombs but because he smells and sees the almighty dollar down in the valley) only to impede the business of this Court through dilatory and self-serving motions filed by the defendants on his behalf. This Court's sanctioning of that type of tactic would be devastating to the less than diligent litigants whose cases are appropriately dismissed from the dormancy list with regularity for delays of only a few months in meeting deadlines or complying with Court orders. Both the trustee and the defendant MDC know that the defendant waived the very defenses they now seek to invoke on the eleventh hour to delay the plaintiff's case.[2]

It is undeniable that a Chapter 7 trustee has the duty to preserve estate assets, 11 U.S.C. § 704(1); Rife v. Ruble, 107 F.2d 84 (6th Cir. 1939). Here the trustee has acted as if he is the trustee for the benefit of one creditor (MDC) only and therefore owed no duty to the debtor, Ms. Richardson or other creditors. Clearly, the Bankruptcy Code contemplates that only estate assets be collected and liquidated for payment of dividends to creditors; however, the trustee frequently takes possession of assets in which the debtor maintains a property right known as an "exemption". If the trustee sells an asset in which the debtor has claimed an exemption, the portion of the proceeds which are attributable to the exemption must first be paid to the debtor before any distribution may be made to unsecured creditors. In re Lambdin, 33 B.R. 11, 11 B.C.D. 103, 9 C.B.C.2d 673 (Bankr.M.D.Tenn. 1983). The theory is similar to satisfying a mortgage or other

---

[2] *See, e.g., Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416, 1431 (3d Cir. 1994) (real party in interest objection waived by failure to raise prior to trial); *Wagner Furniture Interiors, Inc. v. Kenner's Georgetown Manor, Inc.,* 929 F.2d 343, 346 (7th Cir. 1991) (failure to plead objection to capacity is waiver); Gogolin & Stelter v. Karn's Auto Imports, Inc., 886 F.2d 100, 102 (5th Cir.), cert. denied, 494 U.S. 1031, 110 S.Ct. 1480, 108 L.Ed.2d 617 (1990) (real party in interest objection waived by failure to raise prior to trial); Hefley v. Jones, 687 F.2d 1383, 1388 (10th Cir. 1982) (real party in interest objection waived unless pleaded as affirmative defense); Chicago & Northwestern Transp. Co. v. Negus Sweenie, Inc., 549 F.2d 47, 50 (7th Cir. 1988) (same); Blau v. Lamb, 314 F.2d 618, 620 (2d Cir.), cert. denied, 375 U.S. 813, 84 S.Ct. 44, 11 L.Ed.2d 49 (1963) (same); Fox v. McGrath, 152 F.2d 616, 618 (2d Cir. 1945), cert. *denied,* 327 U.S. 806, 66 S.Ct. 966, 90 L.Ed. 1030 (1946) (real party in interest defense freely waivable); *5 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL* 2D §§ 1294-95 (failure specifically to deny capacity to sue is waiver); 6A *id.* § 1554 (failure to raise real party in interest objection is waiver).

lien on the assets; the exemption is, for all intents and purposes, a lien or encumbrance for the benefit of the debtor. Thus, when an asset encumbered by an exemption is lost or destroyed, the debtor has suffered a loss peculiar to her.   Thus, a debtor has standing to sue or to act diligently in pursuing a lawsuit a bankruptcy trustee chooses to ignore or abandon. The other side of that same coin is that since the debtor is a person who foreseeably may be harmed by the trustee's negligent failure to preserve the assets of the estate, the trustee's duty to preserve those assets runs to the debtor as well as to creditors. Indeed, aside from her right to exempt property, a debtor has a right to receive a dividend from the liquidation of estate property if all prior classes have been paid. §726(a)(6). Although such an event is rare, it is not unheard of, especially where creditors fail to file their claims.   Accordingly, the trustee who by clear and convincing evidence in this case has sat on his purported rights while a litigation battle was raging between the parties may have severely undercut or undermined plaintiff's bargaining position and caused her irreparable injury.

Generally, mistakes in valuation will not enable a trustee to recover an abandoned asset," not even upon "subsequent discovery that the property has a greater value than previously believed." In re McGowan, 95 B.R. 104, 106 (Bankr.N.D.Iowa 1988); accord In re DeVore, 223 B.R. 193, 197 (B.A.P. 9th Cir. 1998) (recognizing the "general rule that abandonment is irrevocable"). Accordingly, even if the plaintiff's lawsuit is deemed as having been transferred to the estate in bankruptcy by operation of law when Ms. Richardson filed for bankruptcy, the facts clearly show that the property was abandoned by the trustee.  Plaintiff can sue in her own name to enforce it, because the effect of a trustee's abandoning a claim is to revest the ownership of it in the debtor. E.g., Koch Refining v. Farmers Union Central Exchange, Inc., 831 F.2d 1339,1346 n. 9 (7th Cir. 1987); Catalano v. Commissioner, 279 F.3d 682, 685 (9th Cir. 2002); In re Interpictures Inc., 217 F.3d

74, 76 (2d Cir. 2000)(per curiam). When property of the bankrupt is abandoned, the title "reverts to the bankrupt, nunc pro tunc, so that he is treated as having owned it continuously." Wallace v. Lawrence Warehouse Co., 338 F.2d 392, 394 n. 1 (9th Cir. 1964); see also Sessions v. Romadka, 145 U.S. 29, 51-52 (1892); Catalano v. Commissioner, supra, 279 F.3d at 685; In re Dewsnup, 908 F.2d 588, 590 (10th Cir. 1990) (per curiam). The purposes of retroactive vesting include to protect against the running of the statute of limitations, Sessions v. Romadka, supra, 145 U.S. at 52, and to compensate the trustee for any cost he may have incurred in maintaining the property during his custody of it. Brown v. O'Keefe, 300 U.S. 598, 602-03 (1937) (Cardozo, J.).

In arguing that the trustee abandoned Richardson's claim, plaintiff points to solid irrefutable evidence of the trustee's complete failure to "administer" the lawsuit or to manage it in any way.   No doubt the trustee wanted and intended to abandon plaintiff's claim.  The Bankruptcy Code  requirements for effective abandonment are as follows: The Bankruptcy Code provides that "after notice and a hearing," the trustee, either on his own volition or under order by the bankruptcy court, "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). In addition, property that the bankruptcy court orders the trustee to abandon is deemed abandoned, §554(b), and likewise property that has been scheduled, §521(1), but "not otherwise administered at the time of the closing of a case." §554(c). Property not abandoned under one of these three subsections remains property of the debtor's estate-"unless the court orders otherwise." §554(d). Section 521(1), to which subsection 554(c) refers, requires the debtor to file (so far as bears on this case) a schedule of her assets. Ms. Richardson dutifully did so, and she clearly listed the MDC claim on the schedule, and so abandonment was clearly authorized by section 554(c).

There is an alternative basis for rejecting the defendants' challenge to plaintiff's standing.

The steps that the trustee took to abandon Ms. Richardson's claim would suffice to establish abandonment under the ordinary principles applicable to abandonment, e.g., United States v. Locke, 471 U.S. 84, 98 (1985); Vieux v. East Bay Regional Park District, 906 F.2d 1330, 1341 (9th Cir. 1990); People ex rel. Illinois Historic Preservation Agency v. Zych, 710 N.E.2d 820, 825 (Ill. 1999), a fundamental doctrine of property law.  The Bankruptcy Code provisions regarding abandonment are intended for the benefit of creditors, none of whom complained or is complaining about the trustee's failure to comply with them. They are not intended for the benefit of alleged violators of the debtor's legal rights, and so the defendants are the ones who lack standing- standing to object to the abandonment of Ms. Richardson's claim by the trustee- a nonparty. See Warth v. Seldin, 422 U.S. 490, 500 n. 12 (1975); North Shore Gas Co. v. E.P.A., 930 F.2d 1239, 1243 (7th Cir. 1991). The possession of a legally protectable interest is a prerequisite to suing because otherwise the possessor of that interest would find himself unable to enforce it if another person, an officious intermeddler, had brought suit to enforce it (like a bounty hunter) first. Singleton v. Wulff, 428 U.S. 106, 114 (1976) (plurality opinion); People Organized for Welfare & Employment Rights (P.O.W.E.R.) v. Thompson, 727 F.2d 167, 173 (7th Cir. 1984); Frank Rosenberg, Inc. v. Tazewell County, 882 F.2d 1165, 1170 (7th Cir. 1989); Joyner v. Mofford, 706 F.2d 1523, 1526-27 (9th Cir. 1983). This principle has been enforced with particular stringency precisely in bankruptcy proceedings, to prevent confusion over the ultimate ownership of the assets formerly owned by the bankrupt. In re Westwood Community Two Ass'n, Inc., No. 01-14473, 2002 WL 1299123, at *2 (11th Cir. June 13, 2002); In re Troutman Enterprises, Inc., 286 F.3d 359, 364 (6th Cir. 2002); In re PWS Holding Corp., 228 F.3d 224, 248 (3d Cir. 2000); Kane v. Johns-Manville Corp., 843 F.2d 636, 643, 644 (2d Cir. 1988).  An effort by the trustee or creditors at this late date to seize plaintiff's legal claim is barred by the doctrine of laches.  No one can be said to have a higher title to the claim

than Ms. Richardson, so that if she lacks standing, no one has standing.

    **C.**    **The Doctrine of Laches Prevent Trustee from Arrogating to Himself The Right to Settle this Lawsuit**:

    The equitable origins and character of bankruptcy point to latches as the proper doctrinal guide to cutting off belated efforts by a lackadaisical trustee to intervene in or to hijack a lawsuit he has ignored for three years . See, e.g.,<u>Hawxhurst v. Pettibone Corp.</u>, 40 F.3d 175, 181 (7th Cir. 1994); <u>In re Centric Corp.</u>, 901 F.2d 1514, 1519 (10th Cir. 1990). Laches requires a showing of (1) unwarranted delay (2) prejudicial to the party opposing the reopening, e.g., <u>National R.R. Passenger Corp. v. Morgan</u>, 122 S.Ct. 2061, 2077 (2002); <u>Cox v. McBride</u>, 279 F.3d 492, 494 (7th Cir. 2002), and might well bar the trustee's belated efforts here, because of the combination of the creditors and trustee's complete inexcusable failure to pursue the revelation at their creditor's meeting that Ms. Richardson had a legal claim with the prejudice to plaintiff's suit should the creditors or trustee at this late date seek to intervene to take back a chunk of it. An effort by the trustee or creditors at this late date to seize plaintiff's legal claim is barred by the doctrine of latches. No one can be said to have a higher title to the claim than Ms. Richardson, so that if she lacks standing, no one has standing.

    **D. Ratification of Action By Trustee Precludes A Stay And Trustee is Estopped From Denying Plaintiff's Right To Pursue Claim.**

    Rule 17(a) plainly permits a real party in interest to assign its rights, waive any interest that it may have in the outcome of the suit, and ratify the commencement of the suit by another. See,e.g., <u>Wells Fargo Northwest Bank. N.A. v. Varig-S.A.</u>, No. 02 Civ.6078 (JSR), 2003 WL 21508341, at *3 (S.D.N.Y. June 27, 2003)[3]. "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act . . . is given effect as if originally authorized by him." ***Restatement (Second) of Agency § 82***.

"Affirmance is either (a) a manifestation of an election by one on whose account an unauthorized

---

[3] Ratification is "the adoption,confirmation or failure to repudiate prior unlawful acts which were not legally binding at a time when the [defendant] had the right and knowledge of facts necessary to repudiate such conduct; but which, by ratification or by the failure to repudiate, become the acts of the defendant." *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 653 (5th Cir. 1994).

act has been done to treat the act as authorized, or (b) conduct by him justifiable only if there were

such an election." Id. at § 83. Likewise under Connecticut law "Ratification is defined as the

affirmance by a person of a prior act which did not bind him, but which was done or professedly

done on his account. . . . Ratification requires acceptance of the results of the act with an intent to

ratify, and with full knowledge of all the material circumstances. " Russell v. Dean Witter

Reynolds, Inc., 200 Conn. 172, 185 (1986).

Ratification is determined on the basis of the principal's knowledge of the transaction and

its actions in light of that knowledge.  By accepting the benefits of the lawsuit against the MDC

(which were made possible only by plaintiff's diligent pursuit of her lawsuit for almost three years

in lieu of the lackadaisical trustee), the trustee ratified what may have arguably been a voidable

contract and affirmed his own acceptance of the lawsuit and its probable results.

This Court should note the egregious nature of the trustee's violation of his fiduciary

duties to the plaintiff.    Although the Bankruptcy Code imposes specific duties on bankruptcy

trustees, *see, e.g.,* 11 U.S.C. § 704, the Code does not explicitly make trustees liable for breach of

those duties. The source of trustee liability lies in the Supreme Court's decision in Mosser v.

Darrow, 341 U.S. 267, 272, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951), and its progeny.  *Mosser*

concerned a bankruptcy trustee's breach of his fiduciary duty of loyalty. The trustee in *Mosser*

hired two employees to help administer the bankruptcy estate and expressly agreed that the

employees could "continue to trade in securities of the debtors' subsidiaries." 341 U.S. at 269, 71

S.Ct. at  680.  The Supreme Court concluded that the arrangement with the employees amounted to

a "***willful and deliberate setting up of an interest in employees adverse to that of the trust.***" Id.

at 272, 71 S.Ct. at 682.  Because "[e]quity tolerates in bankruptcy trustees no interest adverse to

the trust," *id.* at 271, 71 S.Ct. at 682, the Court held that the district court had not erred in

surcharging the trustee (i.e., holding the trustee personally liable) for the profits of his two employees, _see id._ at 269-70, 71 S.Ct. at 680-82.  _Mosser_ did not directly address to what extent, if any, bankruptcy trustees are liable for negligent breaches of their duties as trustee. The circuits have divided on this question but suffice it to say that  a trustee is liable _personally_ for acts determined to be willful and deliberate in violation of his duties and is also liable, in his official capacity, for acts of negligence." _Sherr v. Winkler,_ 552 F.2d 1367, 1375 (10th Cir. 1977); accord Ford Motor Credit Co. v. Weaver, 680 F.2d 451, 461 (6th Cir. 1982); see also In re Chicago Pac. Corp., 773 F.2d 909, 915 (7th Cir. 1985) (bankruptcy trustee's personal liability for willful and deliberate violations of fiduciary duties). In addition, the Second and Ninth Circuits have held that "[a]lthough a trustee is not liable in any manner for mistakes in judgment where discretion is allowed, he is subject to personal liability for not only intentional but also negligent violations of duties imposed upon him by law." Hall v. Perry (In re Cochise College Park, Inc.), 703 F.2d 1339, 1357 (9th Cir. 1983) (citations omitted); accord In re Gorski, 766 F.2d 723, 727 (2d Cir. 1985); see also Red Carpet Corp. v. Miller, 708 F.2d 1576, 1578 (11th Cir. 1983) (per curiam) (noting that bankruptcy trustee is personally liable for negligence).

The negligence at issue in this case concerns the trustee's violation of his duty under 11 U.S.C. § 704(1) to "collect and reduce to money the property of the estate for which such trustee serves, and close up such estate as expeditiously as is compatible with the best interests of parties in interest."  Ms. Richardson argues that § 704(1) creates two separate duties: first, to "collect and reduce to money the property of the estate," and, second, to "close up such estate as expeditiously as is compatible with the best interests of parties in interest."   In fact, the duty to close the estate expeditiously is the trustee's "main duty," 4 Collier on Bankruptcy, supra, ¶ 704.01(3), at 704-5, and "overriding responsibility," Estes & Hoyt v. Crake (In re Riverside-Linden

Inv. Co.), 925 F.2d 320, 324 (9th Cir. 1991). In order to close an estate expeditiously, a bankruptcy trustee must expeditiously perform each task necessary to close the estate, including the liquidation of the estate. The duty to close the estate expeditiously will often conflict with other duties, In re Melenyzer, 140 B.R. 143, 155 (Bankr.W.D.Tex. 1992), but this conflict is explicitly recognized in the text of the statute itself, which requires the bankruptcy trustee to balance the need for expeditious conduct against the "best interests of parties in interest," 11 U.S.C. § 704(1). The requirement of expeditious conduct is NOT limited to the actual closing of the bankruptcy estate, and numerous cases have held that the requirement applies to the liquidation of the estate. *Hyman v. Plotkin (In re Hyman)*, 123 B.R. 342, 347 (Bankr.9th Cir. 1991), aff'd, 967 F.2d 1316 (9th Cir. 1992); Lowe v. Sheinfeld, Maley & Kay, P.C. (In re Saunders), 155 B.R. 405, 414 (Bankr.W.D.Tex. 1993); Holland v. First Fed. Sav. & Loan (In re Terrell), 27 B.R. 130, 132 (Bankr.W.D.La. 1983); BeVier v. Warder (In re BeVier), 12 B.R. 75, 77 (Bankr.D.S.D. 1981). Ms. Richardson clearly shows that the trustee's failure to file an appearance in federal court, failure to appoint counsel for the bankrupt estate, failure to hire substitute or alternate counsel to prosecute the case as necessary, failure to comply with court-ordered deadline for almost three years in the matter against the MDC should be viewed as violation of the overriding nature of the trustee's duty to close the estate expeditiously. § 704(1) imposed on the trustee, an affirmative duty to reduce the Richardson's property to money as expeditiously as was compatible with the interests of the Richardson and the other interested parties. So construed, the statute itself provides the necessary standard of care. The issue is not whether the trustee acted reasonably in general, but whether he acted "as expeditiously as [was] compatible with the best interests "of Ms. Richardson and the other interested parties. Stated somewhat differently, the trustee's total and unqualified abandonment of the lawsuit against the MDC as shown by his failure to file an

appearance or to take any action in pursuance of the same were not reasonable given a standard of expeditious conduct by a bankruptcy trustee.  Ms. Richardson is thus correct in claiming that the trustee would certainly be liable for breach of your fiduciary obligations and negligence.

In addition, the trustee  is equitably estopped from asserting a right to pursue the settlement of the lawsuit he had clearly abandoned for three years as he has no more right than that of a thief or a highway robber to  appropriate the proceeds of the the lawsuit in the  manner he proposes to do. Plaintiff was induced to continue financing her lawsuit and to persevere in that endeavor because of the trustee's apparent abandonment of the property.   See, e.g., Morris v. Costa, 174 Conn. 592, 599-600 (1978). General principles of equitable estoppel apply.   "There are two essential elements to an estoppel — the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." (Internal quotation marks omitted.) Reinke v. Greenwich Hospital Ass'n, 175 Conn. 24, 28, 392 A.2d 966 (1978). Further, "[i]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Internal quotation marks omitted.) Id., 28-29.    [T]here must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury . . . The modern estoppel in pais is of equitable origin, though of equal application in courts of law . . . its office is . . . to show what equity and good conscience require, under the particular circumstances of the case . . . (Citations omitted; internal quotation marks omitted.) Novella v. Hartford Accident & Indemnity Co., 163 Conn. 552, 564, 316 A.2d 394 (1972). Estoppel

is rooted in "the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." (Internal quotation marks omitted.) Id., 565. "Estoppel is to protect the innocent and is based on fair dealing and principles of morality . . ." Id., 566.

Moreover, this is a case where the doctrine of judicial estoppel must be invoked in order to prevent a litigant from prevailing twice on separate, mutually exclusive theories. See Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp., 179 F.3d 523, 527 (7th Cir. 1999) ("Judicial estoppel serves "`to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'") (citation omitted); Ladd v. ITT Corp., 148 F.3d 753, 756 (7th Cir. 1998) ("[T]he purpose of the doctrine . . . is to reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant.").     A trustee who acts as if he wants nothing to do with a lawsuit for three years but then purports to "settle" the suit on the eve of trial because he sees hefty commissions for himself raises very disturbing questions about the integrity of the legal process and the Bankruptcy court that continues to countenance his actions which prejudice the debtor and creditors.

E.    **Defendants Waiver of Instant Objection Precludes A stay:**

Defendants waived the instant objection by not raising it at the earliest opportunity they had.  Given that defendants are asserting that Ms. Richardson is not the real party in interest, see Fed.R.Civ.P. 17(a), failure to raise this defense before trial would clearly constitute waiver of the defense. See e.g., United Healthcare Corp. v. Am. Trade Ins. Co., 88 F.3d 563, 569 (8th Cir. 1996) ("Because the requirements in Rule 17(a) are for the benefit of the defendant, we have held that an objection on real party in interest grounds should be raised with reasonable promptness in the trial court proceedings. If not raised in a timely or seasonable fashion, the general rule is that the objection is deemed waived.") (internal quotation marks omitted); Whelan v. Abell, 953 F.2d 663,

672 (D.C. Cir. 1992) ("[W]here a Rule 17 (a) defense is made, judges abuse their discretion in allowing the plea as late as the start of the trial if the real party has been prejudiced by the defendant's laxness."); see also Gogolin & Stelter v. Karn's Auto Imports, Inc., 886 F.2d 100, 102 (5th Cir. 1989); K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1153 n. 2 (10th Cir. 1985); Rosenblum v. Dingfelder, 111 F.2d 406, 407 (2d Cir. 1940).[4]  Please note the defendants are confused about the nature of their objection which is more in the nature of lack of capacity rather than  objection to plaintiff's standing.[5]

As stated above, the defendant MDC was one of the creditors in the bankruptcy proceedings and was intimately familiar with all of the facts and circumstances involving plaintiff

_____

[4]  See, also, United HealthCare Corp. v. American Trade Ins. Co., 88 F.3d 563, 569 (8th Cir. 1996) (quoting Sun Refining & Marketing Co. v. Goldstein Oil Co., 801 F.2d 343, 345 (8th Cir. 1986)). In United HealthCare, the court found that an objection raised one week prior to trial was untimely. Other courts have routinely rejected untimely objections as having been waived. See, e.g., Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1431 (3rd Cir. 1994) (buyer of corporation waived right to require successor in interest of seller to be substituted as party plaintiff, by not raising objection until it made a motion for summary judgment at trial); Gogolin & Stelter v. Karn's Auto Imports Inc., 886 F.2d 100, 102-03 (5th Cir. 1989) (holding that defendant waived real party in interest defense by "untimely assertion," where defendant raised it for the first time in a motion for directed verdict); Hefley v. Jones, 687 F.2d 1383, 1388 (10th Cir. 1982) (objection raised sixteen days prior to trial was untimely); Wagner Furniture Interiors, Inc. v. Kenner's Georgetown Manor, Inc., 929 F.2d 343, 346 (7th Cir. 1991) (failure to plead objection to capacity is waiver); Gogolin & Stelter v. Karn's Auto Imports, Inc., 886 F.2d 100, 102 (5th Cir.), cert. denied, 494 U.S. 1031, 110 S.Ct. 1480, 108 L.Ed.2d 617 (1990) (real party in interest objection waived by failure to raise prior to trial); Hefley v. Jones, 687 F.2d 1383, 1388 (10th Cir. 1982) (real party in interest objection waived unless pleaded as affirmative defense); Chicago & Northwestern Transp. Co. v. Negus Sweenie, Inc., 549 F.2d 47, 50 (7th Cir. 1988) (same); Blau v. Lamb, 314 F.2d 618, 620 (2d Cir.), cert. denied, 375 U.S. 813, 84 S.Ct. 44, 11 L.Ed.2d 49 (1963) (same); Fox v. McGrath, 152 F.2d 616, 618 (2d Cir. 1945), cert. denied, 327 U.S. 806, 66 S.Ct. 966, 90 L.Ed. 1030 (1946) (real party in interest defense freely waivable); 5 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL 2D §§ 1294-95 (failure specifically to deny capacity to sue is waiver); 6A id. § 1554 (failure to raise real party in interest objection is waiver).

[5]  Since the objection is really to failure to name the real party in interest, rather than lack of standing, the savings provisions of Rule 17(a) apply. See Zurich Ins. Co. v. Logitrans Inc., 297 F.3d 528, 531 (6th Cir. 2002). Since the objection is really to lack of capacity under Rules 17(b) and 9(a), and therefore waivable, defendans cannot be allowed to couch it in misleading terms suggesting the objection is to lack of standing.

and he lawsuits. The MDC was the only creditor present at the April 30, 2001 creditor's meeting. On October 18, 2001, defendants filed "Defendants' Motion to Dismiss) without raising the failure to name the real party in interest objection.   Thereafter, defendants filed the following pleadings wherein they missed their opportunity to assert the said objection:  November 20, 2001 (Defendants' Objection to Plaintiff's Opposition to Motion to Dismiss And Request to Deny Motion as Moot); November 21, 2001 (Defendant Jeffrey Johnson's Motion to Dismiss); March 8, 2002 (Defendants' Motion for Summary Judgment); April 9, 2002 (Defendants' Objection to Plaintiff's Motion for Partial Summary Judgment); May 20, 2002 ( Defendants' Objection to Plaintiff's Motion for Leave to File Motion for Summary Judgment Out of Time); June 3, 2002 (Defendants' Response to Second Amended Complaint) June 3, 2002 (Special Defenses of the Metropolitan District Commission and Jeffrey Johnson); June 3, 2003 (Defendants' Objection and Reply to Plaintiff's Response to Summary Judgment and Its Motion to Strike); and November 22, 2002 (Defendants' Motion for Summary Judgement).  The first time defendants mentioned their objection was in the Trial Memorandum.     Under well-settled authority MDC raised the issue in an untimely manner, and the issue is waived.

Even if such a defense were not waived, the objection could be cured, short of dismissal, by ratification, joinder, or substitution of the real party in interest. See Fed.R.Civ.P. 17(a) discussion below.   Rule 17 specifically requires that before an action can be dismissed at a defendant's behest, the court must allow a reasonable time for ratification by, or joinder of, the real party in interest. Thus, the courts have consistently held that Rule 17 objections must be timely raised.  Because the requirements in Rule 17(a) are for the benefit of the Defendant, courts have held that an objection on real party in interest grounds  should be raised with reasonable promptness in the trial court proceedings. If not raised in a timely fashion, the general rule is that

the objection is deemed waived.

**F.    The Savings Provisions of Rule 17(a) Apply.**

Rule 17(a) of the Federal Rules of Civil Procedure provides that "[e]very action shall be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a). See also <u>Rogers v. Samedan Oil Corp.</u>, 308 F.3d 477, 483 (5th Cir. 2002). However, Rule 17(a) also provides that:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest.

FED. R. CIV. P. 17(a). See <u>Wieburg v. GTE Southwest, Inc.</u>, 272 F.3d 302, 308-09 (5th Cir. 2001) (holding that it was abuse of discretion under Rule 17(a) for the district court to dismiss for lack of standing "without explaining why the less drastic alternatives of either allowing an opportunity for ratification . . . or joinder . . . were inappropriate").   Any ratification, joinder, or substitution under Rule 17(a) "shall have the same effect as if the action had been commenced in the name of the real party in interest." FED. R. CIV. P. 17(a). See <u>Ratner v. Sioux Natural Gas Corp.</u>, 770 F.2d 512, 520 (5th Cir. 1985). In <u>Wieburg v. GTE Southwest Inc.</u>, 272 F.3d 302, 308 (5th Cir. 2001) the court took into account that the Trustee had not brought action where dismissal of the pending action after statute of limitations had expired meant creditors had no possibility of any recovery. Furthermore, the courts have allowed substitution under Rule 17(a) where to do so would be to prevent forfeiture and injustice. <u>Id.</u> See <u>Pealo v. AAF McQuay, Inc.</u> 140 F. Supp.2d 233, 237- 38 (N.D.N.Y. 2001) ("Here, the court does not condone plaintiff's failure to disclose his claims, but finds that the reopening of bankruptcy proceedings and the need to prevent a potential windfall are reasons enough to allow plaintiff to proceed with his claims.").   The purpose of the rule is to

prevent multiple or conflicting lawsuits by persons such as assignees, executors, or third-party beneficiaries, who would not be bound by *res judicata* principles. 6A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE. § 1543 (2d ed. 1986). In *Gogolin & Stelter v. Karn's Auto Imports, Inc.,* 886 F.2d 100 (5th Cir. 1989) the court held that if a defendant fails to assert that a party is not the real party in interest in a timely manner, the argument is waived. The Court acknowledged that Federal Rule of Civil Procedure 17(a) requires that an action shall be prosecuted in the name of the real party in interest. *Id.* at 102. However, the Rule also contemplates that real party in interest disputes should arise rarely and should be easily resolved. *Id.* These disputes should be evident to a defendant at the onset of suit because the defendant almost always knows whether suit has been filed by the party who "owns" the claim. *Id.* Thus, the Rule also suggests that a defendant must timely object to allow the joinder of the real party in interest. The objection must be raised when joinder is practical and convenient. *Id.* at 102. "The earlier the defense is raised, the more likely that the high cost of trial preparation for both parties can be avoided if a real party in interest question is determined adversely to a plaintiff." *Id.* Thus, the goal of judicial efficiency is furthered. Here the MDC knew with certainty all the facts and circumstances of the lawsuit as it was also one of the creditors. It filed every conceivable motion under the Rules of Civil Procedure without even an oblique reference to the real party in interest objection.

**G.    The Lawsuit Encompasses Plaintiff's Rights Which Can Never Be Part of the Bankrupt Estate.**

And finally, this Court should absolutely refuse to stay or dismiss this action for the following additional reasons. It is true that an "estate" is created when a bankruptcy petition is filed. See, 11 U.S.C. § 541(a); In re Fitzsimmons, 725 F.2d 1208, 1210 (9th Cir. 1984). Property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the

commencement of the case." §541(a)(1). This broad category includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, *except such as are earnings from services performed by an individual debtor after the commencement of the case.*" §541(a)(6). Thus, postpetition revenues belong to the estate to the extent they are based on pre-petition services or agreements. See, e.g., In re Jess, 215 B.R. 618, 621 (B.A.P. 9th Cir. 1997); In re Wu, 173 B.R. 411, 414-15 (B.A.P. 9th Cir. 1994); Ryerson v. Rau, 739 F.2d 1423, 1425 (9th Cir. 1984). Accordingly, Ms. Richardson's right to compensation for back pay from her pre-petition services at the MDC became assets of her bankruptcy estate. See In re Dillon, 219 B.R. 781, 784 (Bankr.M.D.Tenn. 1998); Waldschmidt v. CBS, Inc., 14 B.R. 309, 311-12 (M.D.Tenn. 1981). In addition, assets of the estate properly included plaintiff's causes of action based on breach of those agreements. See Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 708 (9th Cir. 1986).

However, to the extent that plaintiff may be entitled to moneys representing earnings from services she performed or would have performed at MDC after the filing of the petition, such "back pay" for this period may not be assets of the bankrupt estate.  Certainly her right to job reinstatement with the attendant rights to "*earnings from services performed by an individual debtor after the commencement of the case" are prospective injunctive relief that* cannot be bargained away by the trustee in the manner suggested by the defendants.    She seeks prospective injunctive relief to prevent an ongoing violation of federal law. Courts have found in prior employment cases that reinstatement constitutes prospective injunctive relief. In Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 973 (9th Cir. 1994), an applicant was denied a position as dean of instruction and brought a civil rights action against school officials. After recognizing the limits of the Eleventh Amendment, the court agreed to "hear Cerrato's section

1983 claim to the extent that he asks for prospective injunctive relief from the other defendants in their official capacities (e.g., the enjoining of the SFCC affirmative action plan, the prospective hiring of Cerrato, etc.)." Cerrato, 26 F.3d 968, 973 (9th Cir. 1994) (emphasis added). In Lassiter v. Alabama A & M University, 3 F.3d 1482, 1485 (11th Cir. 1993), vacated on other grounds by Lassiter, 28 F.3d 1146, 1152 n.9 (11th Cir. 1994), a former university vice-president brought suit alleging § 1983 and state law breach of contract claims arising out of his termination. The Eleventh Circuit held that the Eleventh Amendment barred the plaintiff's request for a retroactive damages award.    Nonetheless, the court allowed the plaintiff to seek reinstatement because it constituted prospective relief. Id.  Indeed most circuits have held overwhelmingly that job reinstatement constitutes prospective injunctive relief. See Williams v. Commonwealth of Kentucky, 24 F.3d 1526, 1542 (6th Cir. 1994) (allowing prospective injunctive relief requested in plaintiff's § 1983 action, "namely,  reinstatement"); Russell v. Dunston, 896 F.2d 664, 667-68 (2d Cir. 1990) (holding that reinstatement is the sort of prospective relief that is not barred by the Eleventh Amendment); Melo v. Hafer, 912 F.2d 628, 635-36 (3d Cir. 1990) (holding that the district court erred insofar as it dismissed the plaintiffs' claim for reinstatement); and Elliott v. Hinds, 786 F.2d 298, 302 (7th Cir. 1986) (holding that reinstatement in a wrongful termination case falls outside the prohibitions of the Eleventh Amendment).  The explanation in Elliott is particularly compelling:

> "The goal of reinstatement . . . is not compensatory; rather, it
> is to compel the state official to cease her actions in violation of
> federal law and to comply with constitutional requirements. Elliott's
> alleged wrongful discharge is a continuing violation; as long as the
> state official keeps him out of his allegedly tenured position the
> official acts in what is claimed to be derogation of Elliott's
> constitutional rights."

Elliott, 786 F.2d at 302.

It cannot be said with certainty that the plaintiff has an adequate remedy at law simply because the MDC has made a self-serving "$100 000 offer" to the trustee. [6]  Monetary damages are an adequate remedy at law when the effect of awarding such damage would have placed the injured person in the same position as he would have been, insofar as money can do so, if his statutory rights had been honored. *Racich v. Celotex Corp.,* 887 F.2d 393, 396 (2d Cir. 1989) (". . .compensatory damages are designed to `have the wrongdoer make the victim whole', commensurate with the loss or injury actually sustained . . ."); William W. Wrigley, Jr., Co. v. Waters, 890 F.2d 594, 604 (2d Cir. 1989) (same).   If hired, plaintiff would have worked until age 65 at the foreseeable salary and pension increases of an MDC employee.   The equitable remedy of job "reinstatement" will be ordered once liability is found.   Equitable relief ought not to be denied except where there is a prompt, fair and full remedy at law. *E.g., Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 917-18 (2d Cir. 1986).  Once liability is found, this Court will award Ms. Richardson back pay and order her reinstatement pursuant to 42 U.S.C. § 2000e-5(g).  MDC would have to pay plaintiff back pay for the period from the date of resignation, December 1999, to the date on which she is (1) reinstated or (2) declines the offer of reinstatement. *See EEOC v. Enterprise Assoc. Steamfitters Local No. 638,* 542 F.2d 579, 590 (2d Cir. 1976) (back pay period ends on date of reinstatement).   Accordingly, the trustee who by clear and convincing evidence in this case has sat on his purported rights while a litigation battle was raging between the parties may have severely undercut or undermined plaintiff's bargaining position and caused her

---

[6] In an analogous situation, The Tucker Act allows equitable relief only when it is incidental and collateral to a monetary claim, as when a government employee seeks money damages and reinstatement of a government position. See Giordano v. Roudebush, 617 F.2d 511, 514 n. 4, 6 (8th Cir. 1980); Noot v. Heckler, 718 F.2d 852, 858 (8th Cir. 1983).  Both *Noot* and *Giordano* permit district court jurisdiction over nonmonetary claims if the equitable relief sought "has significant prospective effect or considerable value apart from merely determining monetary liability of the government." *Noot,* 718 F.2d at 858; *Giordano,* 617 F.2d at 514-15. In *Giordano,* a claim was made for monetary and equitable relief. The district court transferred the monetary claim to the Court of Claims, but ruled on the equitable claim for job reinstatement. The Eighth Circuit affirmed the district court's exercise of jurisdiction over the equitable claim. 617 F.2d at 515.  A trustee's need for quick cash must not override plaintiff's nonmonetary claims if the equitable relief sought "has significant prospective effect or considerable value" apart from merely determining monetary liability of a party.

irreparable injury.

### III.    Conclusion.

For al of the foregoing reasons, plaintiff requests that this Court order that the Bankruptcy trustee, Neil Ossen or his successor be joined as a co-plaintiff party to this case under Fed. R. Civ. Proc. 17.   Given clear evidence that the real party in interest objection was waived, and other objection could be cured, short of stay or dismissal, by ratification, joinder, or substitution of the real party in interest, this Court must exercise its discretion to order the relief requested by plaintiff.

**PLAINTIFF**

Paul M. Ngobeni
Paul M. Ngobeni, ct08187
**LAW OFFICES OF PAUL M. NGOBENI**
914 Main Street, Suite 206
East Hartford, CT 06108
Telephone (860) 289-3155
Facsimile (860) 282-7479

## CERTIFICATION

This is to certify that a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF VERIFIED MOTION TO JOIN THE NEIL OSSEN, BANKRUPTCY TRUSTEE OR HIS SUCCESSOR AS PARTY-PLAINTIFF, OR IN THE ALTERNATIVE, MOTION TO SUBSTITUTE SAID TRUSTEE AS PURPORTED REAL PARTY IN INTEREST AND MOTION TO ORDER RATIFICATION BY TRUSTEE** was mailed first-class on January 21, 2004  to:

ANTHONY PALERMINO
945 Wethersfield Ave.
Hartford, CT. 06114

Paul M. Ngobeni